## HEPBURN et al. *v.* THE CITIZENS BANK OF LOUISIANA.

An entry made in a bank-book of a certain amount to the credit of the depositor, if made at the time of the deposit, by a clerk authorized to make the entry, in the absence of proof of any fraud or collusion between the clerk and the depositor, is conclusive on the bank, which will be estopped from alleging that the entry was erroneously made; but where the book is written up afterwards, the entry is not an original one, and may be examined into. Where two witnesses, of unimpeached veracity, contradict each other, the presumption of truth is in favor of the one who swears affirmatively.

APPEAL from the Fourth District Court of New Orleans, *Kennedy,* J., presiding. *Sigur* and *Bonford,* for the plaintiffs. *Pilot,* for the appellants. The judgment of the court was pronounced by

ROST, J. This suit is brought for the recovery of the sum $2,230 73, a balance on State bonds alleged to have been deposited by the plaintiffs with the defendants, and of a farther sum of $1,081 07, for interest on unmatured coupons, alleged to have been due at the time of the deposits. The defendants deny the claim for interest; and further allege that, on the 29th of April, 1845, an entry was made, by their clerk, through error, in the bank-book of the plaintiffs, of a series of bonds amounting to $2,222 20, which series had been deposited by *Peschier & Forstall,* on whose bank-book no entry was made, and that said credit belongs to them. The defendants acknowledge their indebtedness to the plaintiffs for the sum of $32 56, which they tender, and pray that the entry alluded to be declared null and void. The court of the first instance allowed the claim of the plaintiffs on the deposit of the bonds, and rejected their claim for interest. The defendants have appealed; and the plaintiffs ask that the judgment be amended in their favor, and their claim for interest allowed.

In the case of *The Mechanics and Traders Bank* v. *Banks,* 11 La. 260, the Supreme Court held that, a bank is bound for the amount entered as a deposit on a bank-book to the credit of the depositor, by any clerk authorized to make the entry, where there is no evidence of fraud or collusion between the clerk and the depositor. This decision goes far to recognize the doctrine that, unless fraud is alleged and proved, the defendants are estopped from alleging error. The rule thus laid down would however be too general, and we think that the distinction taken in the *Manhattan Bank* v. *Lydig,* 4 Johns. 389, meets the equity of the case. "If the dealer's book," says Justice Spencer, "accompanied the deposit, and the credit be then given when the deposit is made, it

HEPBURN
v.
CITIZENS BANK

becomes an original entry, and would be conclusive on the bank; if, however, the book is sent to be written up afterwards, it is not an original entry and may be examined into." In this case, by a previous agreement, the book remained in bank; the credit was not given at the time of the deposit of the bonds, and in presence of the depositor. We are therefore of opinion that the error alleged may be examined into. Absolute presumptions often work injustice, and should be restricted to the cases expressly provided for their application.

In the contract which the entry in the bank-book created between the plaintiffs and the defendants, the latter allege error as to the person with whom they contracted, and say that they intended to bind themselves to *Peschier & Forstall*, from whom the consideration of the contract had been received. It was incumbent upon them to substantiate that allegation by proof. The evidence adduced did not satisfy the mind of the judge of the court below, and in questions so peculiarly within his province we would not feel authorized to differ from him, unless the judgment was manifestly contrary to evidence.

The error is first attempted to be proved by the order in which the credit stands on the books of the bank, and by its connection with previous and subsequent transactions. The irregularity and gross neglect which has given rise to this controversy, and the fact, that the books of the bank show on their face other errors made at the time of those entries, renders this kind of evidence of very little value; and the present appearance of the books is far from establishing the fact that, the transactions they record were made in the order in which they are entered. One of the clerks of the defendants states that, one of the plaintiffs told him that, on the 1st April, 1845, he was out of bonds, and that all those he had since acquired or deposited in bank were obtained from the houses of *Albert* and *A. Lanfear & Co*. Upon that admission the defendants obtained from those two houses a list of the bonds delivered by them to the plaintiffs. They obtained also from the plaintiffs a list of the bonds they had sold during that time; and this clerk testified that he examined the memoranda of bonds sold by *Lanfear & Co*. and by *Albert* to *Turpin*, and a memorandum of the series sold by *Hepburn & Turpin*, and also the entries made in the name of *Hepburn & Turpin* of bonds deposited by them in bank; and that upon that examination he found that the plaintiffs had sold and deposited from the 1st to the 30th April, ten bonds more than they had received.

But the credit alleged to have been given in error was for five bonds only, and the identity of the other five bonds with a series purchased by the plaintiffs from *Shiff*, is not placed beyond doubt; if it was, the list of bonds sold by the plaintiffs, given in evidence by the defendants, shows that after identifying all the bonds contained in the lists of *Albert* and *Lanfear & Co*., ten bonds still remained in their possession. These bonds are unaccounted for, and corroborate the testimony of *Hemlin*, the clerk of *Lanfear & Co*., who states that the list furnished by that house did not contain the cash transactions; that the house several times sold Citizens Bank funds to the plaintiffs for cash, and that in such cases no entry was made to the debit of the plaintiffs, those sales being entered as cash sales.

Besides this most uncertain and unsatisfactory evidence, the clerk of the bank, who made the entry, swears that the plaintiffs deposited no bonds during the day on which it was made; but the clerk of the plaintiffs swears positively that they did. The truth or falsehood of their declarations, and one of the two

must be untrue, rests between God and their consciences. The veracity of Hepburn neither is impeached, and the court below correctly considered that the pre- *v.* Citizens Bank sumption of truth is in favor of the witness who swore affirmatively. 1 Starkie, p, 516, sec. S2.

The books of the plaintiffs appear to have been at all times open to the inspection of the defendants. The defendants might have had them brought into court, if they had deemed it to their advantage. They might have availed themselves of the testimony of *Mallard*, who posted them up after the occurrence of these transactions; and, as a last resort, they might have put the case to the conscience of their adversaries, by requiring one or both of them to answer interrogatories in open court. They were bound to make out their case, and this litigation cannot be indefinitely protracted because they have neglected some of the means they had of doing so. The course they have pursued may have been adopted after mature deliberation; and, as the case is before us, the plaintiffs must have judgment for the amount of the deposits entered upon their bank-book.

There is no error in that part of the judgment refusing the interest claimed. The bank has never allowed interest on coupons not matured, except during the month of January, 1844. The plaintiff's account with the bank had been open before that time, and they were credited with interest on the coupons deposited in that month only. They were repeatedly told by the officers of the bank, that previous to that month and afterwards no interest would be allowed. When that allowance was made they did not claim interest on coupons deposited prior to its date, and they have continued since to deal with the bank. Their accounts have often been balanced without a claim for interest having ever been made, before the institution of this suit. Without enquiring, therefore, into the absstract legal rights of the plaintiffs, and the manner in which interest accrues on obligations, we are satisfied that the arrangement entered into between the plaintiffs and the defendants in relation to these bonds, was made with the tacit understanding between them that no interest should be charged before the maturity of the coupons. *Judgment affirmed.*