(118 So. 871)

No. 29307.

## AMERICAN NAT. INS. CO. v. MARINE BANK & TRUST CO.

### In re MARINE BANK & TRUST CO.

Oct. 29, 1928.  Rehearing Denied Nov. 26, 1928.

Terriberry, Young, Rault & Carroll, of New Orleans, for relator.

Eugene J. McGivney and Solomon S. Goldman, both of New Orleans, for respondent.

ST. PAUL, J.  Plaintiff had an agent in the city of New Orleans with authority to collect premiums for its account, which he did.  He also had authority to open two bank accounts for plaintiff, one in the name of "C. L. Flora, Superintendent," and the other in the name of plaintiff.

He had authority to draw checks against his account as superintendent, but no authority to draw against the account which stood in the name of the company itself.

All collections were deposited to the credit of the superintendent's account; all expenses, including commissions, were to be paid out of this account, and the surplus was to be transferred to the credit of the company's account and drawn out only by the company itself.

Some time after becoming plaintiff's agent, Flora conceived the idea of using plaintiff's money (temporarily at least) for his own account, and carried out his scheme in the following manner:

He would draw a check against his superintendent's account for the amount due the company, but instead of depositing said check to the company's account he would redeposit the same in his superintendent's account, thus leaving both accounts unchanged. But at the time of making the deposit to his superintendent's account, he would obtain from defendant's teller what appeared to be a duplicate deposit slip of the deposit which he was then making, but was in fact an attested deposit slip purporting to show that the deposit was made to the credit of the company's account.  This deposit slip he then sent to the company as evidence that he had made the proper deposit to its credit.

A few days afterwards, in order that the company's check should not be refused pay-

ment when presented, he would make a bona fide deposit of the same amount to the credit of the company's account.

This process continued at weekly intervals from July 8, 1922, to February 28, 1923, every simulated deposit up to that time having been regularly made good within a few days as aforesaid. Meanwhile the company had never sought from the bank any statement of its account or checked up the deposits to its credit to see if they corresponded with the deposits reported by Flora; which, if done, would immediately have disclosed to the company the true state of affairs, to wit, that Flora was invariably several days late in making the deposits which he should have made.

On March 2, 1923, Flora made a simulated deposit as above outlined of $713.43, and another on March 3d of $745.21, amounting together to $1,458.64; which two last-named deposits were never made good by bona fide deposits of like amount. For about that time the auditor of the plaintiff company made an examination of Flora's accounts and discovered that Flora was short with the company for a total of $2,046.60, including the above-said $1,458.64; and on March 10th he obtained from Flora a written acknowledgment to that effect.

Flora was not discharged, but was still in the employ of plaintiff when this suit was filed, which is for the recovery of the amount of the two simulated deposits not made good by Flora.

### I.

The district judge rejected plaintiff's demand on the ground that—

"A loss occurred which was caused by the fraudulent manipulation, by a man then and still employed by plaintiff, of two bank accounts in the defendant bank. It appears obvious to me that loss occasioned by the misconduct of an employee should fall upon the employer, and not upon another."

The Court of Appeal reversed that judgment and gave judgment for plaintiff on the ground that the negligence of defendant's teller in issuing the series of false duplicate deposit slips prevented plaintiff from detecting the fraudulent scheme of its agent.

### II.

It requires no lengthy citation of authorities to establish that a bank is not liable for the amount of a credit given for a deposit when in fact no such deposit was made. Canal Bank & Trust Co. v. Priez, 14 Orleans App. 405.

And we are unable to see any causal connection between the negligence of defendant's teller and the loss suffered by plaintiff. Plaintiff's money had already been appropriated by Flora to his own use before any negligence on the teller's part had intervened; and the most that can be said is that the teller's negligence in issuing the false deposit slips assisted Flora, for a while, to hide from plaintiff the fact of his previous wrongful use of its funds.

And the fact of the matter is that Flora's collections averaged about $1,400 or $1,500 per week, and almost from the very beginning he was using the collections of one week to cover the deposits which he should have made the week before.

This would and could have been discovered by a simple inspection of his books and bank accounts at any time. But plaintiff made no such examination until March 5, 1923, and hence it was as much plaintiff's own neglect as the fault of defendant's teller which enabled Flora to hide his shortage during that period. But the fact remains that Flora's shortage from week to week preceded and did not follow the issuance of the false deposit slips, and hence the issuance of these deposit slips were not the means by which Flora took plaintiff's money.

The situation is a little confusing because of the carrying of two separate accounts, but it is no different from what it would have been had Flora, instead of pretending to make a deposit to the company's credit,

sent his own check to the company when he had no funds to his credit, and deposited the collections for the following week in time to make that check good.

We think plaintiff's loss was caused by the fraud of its own employé and its own failure to check him up seasonably, rather than by the negligence of the bank teller.

### Decree.

The judgment of the Court of Appeal is therefore reversed, and it is now ordered that the judgment of the district court be affirmed, at plaintiff's cost in all courts.