This suit involves the correctness of a credit entry of One Thousand Four Hundred ($1,400) Dollars made by Mr. W.W. Kelly, defendant's assistant cashier, in the savings account book issued by it to the plaintiff. Plaintiff contends that the credit was properly made after she had counted out to the officer this amount in currency. The bank's contention is that the entry was made through error and had not as its basis any deposit whatever.
Plaintiff opened a savings account with defendant on April 19, 1940, by depositing $780 in currency. On April 29th she made another deposit to this account consisting of:
Currency ...................................... $ 200.00 Silver ........................................ 30.00 Check of J.F. Jones T/C ....................... 71.92 Her draft on Bank of Oak Grove, La ............ 1400.00 ------- Total ..................................... 1701.92
This deposit was duly entered in plaintiff's passbook by the assistant cashier, and a new balance of $2,481.92 extended. On May 13th the embattled credit of $1,400 was entered by Mr. Kelly and a new balance of $3,881.92 extended. The account was inactive until October 24th, on which date the passbook with plaintiff's check for $751.95 in favor of the tax collector were presented. The check was paid, debit therefor entered in the passbook, and a new balance of $3,129.97 struck. On October 31st plaintiff withdrew $1,000 and tendered her book for proper entry. It was then, on comparing the passbook with the bank's ledger, discovered by Mr. James Craig, teller and bookkeeper, that the two did not agree. The credit of $1,400 did not appear on the bank's ledger at all. Craig called Kelly's attention to the matter, and the two discussed it with Mr. Morgan, vice-president and cashier. The conclusion was soon reached that an error had been committed by Kelly and that the passbook should be corrected to correspond with the true facts as were reflected from the bank's records. This, it was decided, could best be done by erasing the credit entry of $1,400 and extending a new and correct balance. Plaintiff objected to any erasures being made. Lines were then drawn through all credit and debit entries and balances subsequent to April 29th. When this had been done and the two debits re-entered, the book showed deposits of $780 and $1,701.92; withdrawals of $751.95 and $1,000, and a final balance of $729.97.
Plaintiff sues to recover said $729.97 and the contested $1,400, a total of $2,129.97, with two per cent (2%) interest from May 5, 1940, to February 5, 1941, date of amicable demand, and for legal interest on the amount from judicial demand. Defendant admits owing her $729.97 with two per cent *Page 329 
(2%) interest on the account with interest to December 31, 1940, amounting to $9.86. After trial was begun but before testimony was adduced, admission was made and entered in the record that tender of $739.83 at that time was made to her.
There was judgment for plaintiff for $739.83 with two per cent (2%) per annum interest thereon from January 1, 1941. Her demand in other respects was rejected. She was cast for all costs accruing since date of tender, and appealed.
The paramount question in the case is one of fact. It is: Did plaintiff deposit $1,400 with defendant in currency on May 13th? To support her contention on this score, she depends upon the credit entry in the passbook, her own testimony, that of her driver, Rastus Price, and that of Mrs. Bertha Hulse, a friend.
Plaintiff lives in Delhi, Louisiana, not over fifteen (15) miles from the town of Rayville, defendant's domicile. She testified that on the morning of May 13th she engaged Mr. Price to drive her to Rayville and that on arriving at the bank both went inside; that she went to Mr. Kelly's window and there, in his presence, and that of Mr. Price, who she says was close by, counted out the $1,400 consisting of bills of One, Five, Ten and Twenty Dollar denominations; that Mr. Kelly recounted the currency and finding it to aggregate $1,400 entered credit therefor in the passbook and returned it to her. Price testified that he was not more than two or three feet from plaintiff when the two countings occurred; that he heard both parties, respectively, after each count, say $1,400; that Mr. Kelly made an entry in the passbook, handed same back to plaintiff, turned around and carried the cash into the vault or some other place of deposit. He was certain this occurred on a Monday in May, 1940. Both Price and plaintiff are positive that she transacted no other business with the bank at that time. In this they are undoubtedly in error because at that time plaintiff deposited $83.89 to her checking account which had been closed for over two years. Plaintiff is also in error in saying she went to Mr. Kelly's window on October 31st when the error was discovered. She went to Mr. Craig's window.
Mrs. Hulse testified that in the spring of 1940 she visited plaintiff in Delhi and while there plaintiff made known to her that she had considerable cash in her home. The only information Mrs. Hulse had concerning the money was acquired from plaintiff. She understood the amount to be as much as $1,300 and advised plaintiff to take it to some bank. She recalled that the visit was made on a Sunday. The testimony of this witness was objected to as being hearsay. It was admitted subject to the objection. The objection should have been sustained. The testimony is purely hearsay.
Plaintiff owns considerable revenue producing real estate in Richland Parish, consisting of twenty-eight (28) rental buildings and residences in the town of Delhi, from which she derives monthly rentals averaging Three Hundred ($300) Dollars, and approximately one thousand (1,000) acres of land of which there are in cultivation 600 acres. She is physically and mentally alert and personally attends to her business affairs. She loans money on security, buys property at tax sales and invests or otherwise places her money where it will yield the best returns.
Considerable effort was made by defendant's counsel to have plaintiff disclose precisely the source or sources from which she acquired the $1,400 in controversy. She at first was uncertain, evasive and equivocal, but finally stated that it was composed of rents, sales of improved property, hay and hogs, and $625 paid her April 17, 1940, on a mortgage note held by her against land from which the timber on that date was sold. She produced no books, records nor account sales to corroborate her testimony.
The record is inconclusive of the question, but it is highly probable that the $625 paid her on April 17, 1940, was included in the deposit of $780 made two days later. She is positive it was not included. It is unlikely that this amount would have been withheld from deposit until May 13th in view of the fact that she made two deposits in the interim.
Plaintiff rendered income tax returns for 1940. This case was tried in May, 1941. She was questioned concerning same and was asked if she could, off-hand, give the total of her income as disclosed by the returns. She was unable to do so. Had copies of the returns been introduced in evidence it is possible their contents would throw light on collateral issues otherwise largely obscure.
Mr. Kelly waited on plaintiff when she made the deposit of $1,701.92 on April 29th, which, as said before, included her draft of $1,400 on the Bank of Oak Grove. This draft was accepted at its face value and *Page 330 
credited as so much cash. It was not taken for collection to be credited when paid. It is shown that when a savings deposit is made, the depositor is not given a regular deposit slip as is done in checking accounts. The credit entry in his passbook provides him with evidence of the deposit. However, a deposit slip containing a brief description of the items making up the deposit is made out by the receiving officer and retained by the bank for its own records. The ledger sheets are made from these slips. These sheets contain the dates and amounts of deposits and withdrawals.
Mr. Kelly, explaining the circumstances under which the credit of $1,400 was made, testified that plaintiff came to his window and asked if the draft on Oak Grove had cleared; that he then inquired about the draft in the collection department and on being advised that it had cleared he, "without consulting the ledger, entered the $1,400.00 in Miss Smith's passbook through error". He further testified:
"Q. Were you under the impression that the fourteen hundred dollars had not been previously credited to Miss Mattie's account? A. I don't quite get the question there.
"Q. Were you under the impression that the fourteen hundred dollars had not been previously credited to Miss Mattie's account? A. Well, of course a year ago, I don't know exactly what my impression was at that time.
"Q. Why did you credit her with fourteen hundred dollars, Mr. Kelly? A. For the reason that I knew the draft had been given me and had not been inserted in her book I thought, you see.
"Q. That is what I am asking. A. Yes, that is the idea.
"Q. At that time — I repeat the other question; Were you under the impression she had not received credit for the fourteen hundred dollars? A. That is right."
He did not state, nor was he questioned thereon, whether he made out a deposit slip for the bank's records. Evidently, contrary to the rule, he did not do this. Had it been done the alleged error would doubtless have been discovered at close of the day's business because the accounts would have then been out of balance to the extent of $1,400, whereas it is shown they did balance.
Plaintiff emphatically denies that she made inquiry about the draft being paid. She assigns as reasons for not doing so that she knew the draft would be paid because she had the money in the drawee bank and had already been given unconditional credit therefor in her passbook. Since the passbook on that occasion was in Mr. Kelly's hands, one of two things happened. Plaintiff did make inquiry about the draft and handed the book to Mr. Kelly for the credit to be entered or she did make the deposit of $1,400.
Mr. Morgan discussed the matter with plaintiff more than once. A few days after the discovery of the alleged error, one of the discussions occurred. He gave the following testimony, viz:
"A. Well, to start with, just make a statement; you know when they have mixups in the bank, can't settle it, I am the one to try to settle it; so Miss Mattie came to me, and said she had a deposit of fourteen hundred dollars on the books, that she hadn't gotten credit for; naturally, I asked her what it was composed of, what the deposit was, so she presented me with a check thirteen hundred seventy-five dollars on the Bank of Oak Grove, which she said she cashed, got the cash on it and added twenty-five dollars to it, to get the fourteen hundred dollars cash to put in the bank.
"Q. In your bank, the Richland State Bank? A. In our bank. So I asked Miss Mattie another question or two; she thought I was quizzing her, got up and went out; we couldn't get any further * * *."
He was not closely questioned with regard to the description of the $1,375 check which plaintiff exhibited, nor whether it had a bank's "paid" stamp on it. Plaintiff did receive a check of a Mr. Griffis for $1,375 on April 17th on the Bank of Oak Grove, but it was presented by her and paid on April 26th, and, of course, thereafter returned to Mr. Griffis. The amount was included in the draft of $1,400.
The best evidence of the making of a savings account deposit is its entry in the depositor's passbook. The entry is the sole evidence possessed by the depositor that he has made a deposit and is his protection against eventualities. From the deposit there arises the relation of debtor and creditor. Allen et al. v. Cochran et al., 160 La. 425, 107 So. 292, 50 A.L.R. 459. Therefore, a credit entry in a passbook has more than casual meaning and significance. It is prima facie evidence that a deposit has been made and its amount. However, the correctness of such an entry may be made *Page 331 
the subject of judicial inquiry under appropriate allegations of error.
Plaintiff's counsel objected to introduction of testimonial proof to contradict the verity of the deposit of $1,400. The objection was overruled and properly so. Early jurisprudence of the state supports plaintiff's position. It was held in these cases that unless there was evidence of fraud or collusion between the receiving officer and the depositor, the bank was estopped to traverse the correctness of a credit entry in the depositor's passbook, or checking account. Mechanics' Traders' Bank v. Banks, 11 La. 260; Hepburn et al. v. Citizens Bank of Louisiana, 2 La.Ann. 1007, 46 Am.Dec. 564.
That which is said in either of these cases which supports plaintiff's contention is no longer the law of this state. It has been impliedly, if not expressly, overruled in many subsequent cases. In American National Insurance Company v. Marine Bank 
Trust Company, 167 La. 153, 118 So. 871, 872, it is said:
"It requires no lengthy citation of authorities to establish that a bank is not liable for the amount of a credit given for a deposit when in fact no such deposit was made. Canal Bank Trust Co. v. Priez, 14 Orleans App. 405."
It is held in the cited Orleans Appeal case that:
"An entry by a bank clerk to a depositor's credit in the latter's pass book is not conclusive, but simply presumptive evidence of its correctness and may be controverted."
A composite of the law pertinent to the questions under discussion is given in 7 American Jurisprudence 329, 330, § 460. It reads:
"Ordinarily, whenever a deposit is made, the amount and date thereof are entered by the cashier or teller in the bankbook or passbook of the depositor; and such entries, when made by the proper officer, bind the bank as admissions. An entry in the passbook, however, is not a written contract within the rule that parol evidence is inadmissible to vary a written contract; rather, such an entry is in the nature of a receipt and is prima facie evidence that the amount credited was received by the bank, and the entries may be explained or contradicted on behalf of the depositor or of the bank. However, in some cases a much stronger effect has been given to an entry in the depositor's passbook; and when it is made at the time of the deposit, as contradistinguished from a subsequent entry from the books of account of the bank, it has been held conclusive on the bank as an original entry."
To support this last statement the Hepburn case, supra, is cited.
9 Corpus Juris Secundum, Banks and Banking, pp. 552, 553, § 271, a, well states the prevailing law on the subject as follows:
"A `pass book' as the term has been defined is a book in which a bank or banker enters the deposits made by a customer, and which is retained by the latter. The entry of a deposit in a depositor's pass book is an admission of indebtedness to the depositor on the part of the bank and may evidence a contract to repay the money to the depositor or to his order; but such an entry is not necessary to bind a bank which has actually received a deposit. A pass book is prima facie evidence of the matters therein, and while in law it is nothing more than evidence of a debt owing by the bank to the depositor, and not conclusive in the first instance, it may become conclusive if unexplained or not objected to."
It is a rule of evidence, to which there is no dissent, that if a credit entry in a depositor's passbook is challenged on the ground of error, the burden of sustaining allegations to that effect rests upon the one who charges the error.
When the case was reached for argument, plaintiff's counsel filed a conditional motion to remand. We excerpt therefrom salient allegations, to-wit:
"To the Honorable the Judges of the Circuit Court of Appeal of the State of Louisiana, Second Circuit:
"Comes Mattie E. Smith, Plaintiff and Appellant in the foregoing styled and numbered cause, and through her attorneys, Anders Anders, and appearing herein for the purpose of this motion, shows to the Court, as follows:
"I. That since the trial of this cause in the Fifth District Court for the Parish of Richland, State of Louisiana, and since the filing in this Court her appeal from the judgment of the Fifth District Court of Richland Parish, Louisiana, it has come to the knowledge of Plaintiff, Appellant herein, that on one occasion the cash account of defendant, Richland State Bank was short on one day in the sum of $800.00; that several days after the discovery of this *Page 332 
shortage this money was recovered from the possession of an employee or former employee of said defendant bank.
"II. That this shortage of $800.00 occurred since the trial of this cause in the District Court of Richland Parish, and that this same employee who removed this $800.00 from the cash drawers of defendant bank was employed by said Richland State Bank during the time your mover herein made all deposits and withdrawals from her saving's account opened by her on April 19th, 1940 with defendant bank.
"III. Mover is further informed that since the trial of this cause in the Fifth District Court of Richland Parish, and since the discovery of the above mentioned shortage of $800.00, that further discrepancies in the handling of the accounts and affairs of said defendant bank have been discovered and uncovered, all of which facts if properly before this Honorable Court in evidence, could have and would have the effect of greatly aiding this Honorable Court in its consideration of the most vital question involved in the issues in this case."
This case, due to the important and far-reaching legal principles involved, has been given more than usual study and consideration. In view of the lack of complete development of facts germane to several material questions and issues arising during the trial, commented on herein, coupled with the allegations of the motion to remand, we have decided to avail ourselves of the power conferred by Article 906 of the Code of Practice, set aside the judgment and remand the case for the introduction of any additional pertinent and relevant evidence.
In thus temporarily disposing of the case, it is apropos to refer to the lofty judicial sentiments expressed by the late lamented Justice Blanchard in Bastrop State Bank v. Samson Levy,106 La. 586, 31 So. 164, to-wit:
"Judicial tribunals are established to administer justice between litigants, and the first and most important step to that end is the ascertainment of the truth of the controversies which come before them. It is only when the truth is ascertained that the law can be applied in the just settlement of disputes.
"Litigants owe the duty of assisting in every legitimate way in the elucidation of the truth."
For the reasons assigned, the judgment appealed from is annulled, reversed and set aside; and it is now ordered, adjudged and decreed that this case be and it is hereby remanded to the court a qua for further proceedings. Fixing of responsibility for costs will await final judgment.
DREW and HAMITER, JJ., concur.