LANDRY, Judge.
Plaintiff Francis N. Ash initiated this litigation to recover from defendant Livingston State Bank & Trust Co. and its insurer, United States Fidelity and Guarantee Company, an alleged cash deposit of $4,500 and damages in the sum of $7,500 for humiliation and embarrassment resulting from the reputed public slander and defamation of plaintiff by employees of defendant bank. From an adverse judgment rejecting his demands in toto, plaintiff has taken this appeal.
The petition filed herein sets forth that on November 4, 1957, plaintiff deposited in defendant bank the sum of $10,670 cash in return for which he was issued properly initialled deposit slip and passbook acknowledging receipt thereof by defendant’s Teller, Lancy Edward Hill, Jr. He further asserts that following the deposit he received a letter from defendant bank advising him that he had deposited only $6,170 rather than $10,670, therefore, his account had been erroneously credited an excess of $4,500. Upon reporting to the bank in response to the letter received, he alleges that certain officers of said institution not only declined to recognize his deposit as being in the sum of $10,670 but also subjected him to public ridicule, humiliation, embarrassment and threats of prosecution.
Defendant insurer excepted to plaintiff’s petition as stating no right and no cause of action. By agreement of counsel the exceptions were referred to the merits but were never ruled upon by the trial court. Said defendant having neither appealed nor answered the appeal by plaintiff herein is presumed to have abandoned its exceptions.
Plaintiff’s entire case is predicated on the premise the law of this state is to the effect that a deposit slip and passbook issued by a depository bank in exchange for a cash *865 deposit which has been counted by the bank’s employee is conclusive and binding upon the institution receiving the deposit and the correctness thereof may not subsequently be disputed or refuted. On this ground, in the trial below, plaintiff objected to all evidence offered by defendant in support of the express allegation plaintiff’s account was erroneously credited with an excess of $4,500. The trial court overruled plaintiff’s said objection of which ruling plaintiff complains on this appeal.
Defendant, however, contends the rule which obtains in this state is that deposit slips and passbooks are but prima facie proof of the deposits indicated or entered thereon, the presumption of receipt thereof being rebuttable upon proof of mistake, fraud or error.
An excellent summary of the law governing the legal inference to be drawn from bank passbooks and deposit slips is contained in Volume 7, Am.Jur. pages 329 and 330, Sections 460 and 461, respectively, the pertinent portions of which read as follows :
“§ 461. Effect of Deposit Slip upon Deposit Account — A deposit slip, whether made out by a customer or executed by a bank arid delivered to a depositor, is not a written contract in which all oral negotiations and stipulations are merged, but is merely a receipt constituting prima facie evidence that the bank received the sum stated at that time; it may be explained or contradicted by parol evidence on behalf of the depositor or of the bank.” 7 Am.Jur. 330, Sec. 461.
“§ 460. The Passbook Generally— Ordinarily, whenever a deposit is made, the amount and date thereof are entered by the cashier or teller in the bankbook or passbook of the depositor; and such entries, when made by the proper officer, bind the bank as admissions. An entry in the passbook, however, is not a written contract within the rule that parol evidence is inadmissible to vary a written contract; rather, such an entry is in the nature of a receipt and is prima facie evidence that the amount credited was received by the bank and the entries may be explained or contradicted on behalf of the depositor or of the bank. However, in some cases a much stronger effect has been given to an entry in the depositor’s passbook; and when it is made at the time of the deposit, as contradistinguished from a subsequent entry from the books of account of the bank, it has been held conclusive on the bank as an original entry.” 7 Am.Jur. 329, Sec. 460.
As a general rule deposit slips and passbooks are ordinarily accorded similar treatment and interpretation as indicated by the following appearing in 42 A.L.R.2d page 602, §2:
“§ 2. Summary. Since deposit slips and the entries in a passbook are both generally considered to be in the nature of receipts, the admissibility of extrinsic evidence to explain or contradict them is governed, in general, by the rules in that regard with reference to receipts generally.” 42 A.L.R.2d page 602, § 2.
Similar statements of the law are contained in Volume 9 C.J.S. Banks and Banking §§ 270 and 271a, pages 552, 553, in which we note:
“§ 270. Deposit Slips. A deposit slip is a mere acknowledgment by the bank that the amount named has been received, and an indication of the customer’s purpose to make a deposit. While such slip constitutes an admission by the bank that the relation of debtor and creditor has been created, and furnishes evidence of the date and amount of deposit, it is not conclusive, and the true state of the accounts and not the deposit slip or bank entry determines the rights of the parties.” 9 C.J.S. § 270, p. 552.
*866 “§ 271 * * * A pass book is prima facie evidence of the matters therein, and while in law it is nothing more than evidence of a debt owing by the bank to the depositor, and not conclusive in the first instance, it may become conclusive if unexplained or not objected to. * * * ” 9 C.J.S. § 271a, p. 553.
The early jurisprudence of this state was indeed to the effect that entries on deposit slips and passbooks issued by banks were conclusive and binding upon the bank receiving the deposit. In Mechanics’ & Traders’ Bank v. Banks, 1837, 11 La. 260, it was held that entries in a bankbook by a clerk authorized to make them are, in the absence of fraud or collusion, conclusive upon the bank. The rule enunciated in the cited authority was subsequently modified in Hepburn v. Citizens Bank of La., 1847, 2 La.Ann. 1007, wherein it was held the conclusive presumption applied only in those cases wherein the entry was made at the time of the deposit and did not obtain with respect to subsequent entries from the bank’s books entries of the latter character being open to explanation and contradictions upon proper showing.
However, in the comparatively recent case of Smith v. Richland State Bank, 1942, 9 So.2d 327, 331, the Court of Appeal, Second Circuit, clearly and expressly stated the rule to be that deposit slips and passbooks are but prima facie evidence of deposits and may be explained or contradicted in the event of error, the burden of proof with respect thereto resting upon the depository institution. We observe in the Richland case, supra, the following pertinent language:
“Plaintiff’s counsel objected to introduction of testimonial proof to contradict the verity of the deposit of $1,-400. The objection was overruled and properly so. Early jurisprudence of the state supports plaintiff’s position. It was held in these cases that unless there was evidence of fraud or collusion between the receiving officer and the depositor, the bank was estopped to traverse the correctness of a credit entry in the depositor’s passbook, or checking account. Mechanics’ & Traders’ Bank v. Banks, 11 La. 260; Hepburn et al. v. Citizens Bank of Louisiana, 2 La.Ann. 1007, 46 Am.Dec. 564.
“That which is said in either of these cases which supports plaintiff’s contention is no longer the law of this state. It has been impliedly, if not expressly, overruled in many subsequent cases. In American National Insurance Company v. Marine Bank & Trust Company, 167 La. 153, 118 So. 871, 872, it is said:
“ ‘It requires no lengthy citation of authorities to establish that a bank is not liable for the amount of a credit given for a deposit when in fact no such deposit was made. Canal Bank & Trust Co. v. Priez, 14 Orleans App. 405.’
“It is held in the cited Orleans Appeal case that:
“ ‘An entry by a bank clerk to a depositor’s credit in the latter’s pass book is not conclusive, but simply presumptive evidence of its correctness and may be controverted.’
“A composite of the law pertinent to the questions under discussion is given in 7 American Jurisprudence 329, 330, § 460. It reads:
“ ‘Ordinarily, whenever a deposit is made, the amount and date thereof are entered by the cashier or teller in the bankbook or passbook of the depositor; and such entries, when made by the proper officer, bind the bank as admissions. An entry in the passbook, however, is not a written contract within the rule that parol evidence is inadmissible to vary a written contract; rather, *867 such an entry is in the nature of a receipt and is prima facie evidence that the amount credited was received by the bank, and the entries may be explained or contradicted on behalf of the depositor or of the bank. However, in some cases a much stronger effect has been given to an entry in the depositor’s passbook; and when it is made at the time of the deposit, as contradistinguished from a subsequent entry from the books of account of the bank, it has been held conclusive on the bank as an original entry.’
“To support this last statement the Hepburn case, supra, is cited.
“9 Corpus Juris Secundum, Banks and Banking, pp. 552, 553, § 271, a, well states the prevailing law on the subject as follows:
“ ‘A “pass book” as the term has been defined is a book in which a bank or banker enters the deposits made by a customer, and which is retained by the latter. The entry of a deposit in a depositor’s pass book is an admission of indebtedness to the depositor on the part of the bank and may evidence a contract to repay the money to the depositor or to his order; but such an entry is not necessary to bind a bank which has actually received a deposit. A pass book is prima facie evidence of the matters therein, and while in law it is nothing more than evidence of a debt owing by the bank to the depositor, and not conclusive in the first instance, it may become conclusive if unexplained or not objected to.’
“It is a rule of evidence, to which there is no dissent, that if a credit entry in a depositor’s passbook is challenged on the ground of error, the burden of sustaining allegations to that effect rests upon the one who charges the error.”
It is clear, therefore, the law in Louisiana today is that a bank deposit slip as well as an entry in a depositor’s passbook are only prima facie evidence that the amount credited thereon was received by the bank and such evidence of deposit may be explained or contradicted by the recipient bank in the event of fraud, error, mistake or collusion, the burden of proof resting upon the bank to adduce proof thereof. It follows, therefore, the learned trial court properly overruled plaintiff’s objection to the evidence offered by defendant to show error in the issuance of the deposit slip and entry in the passbook involved herein.
It being incumbent upon defendant bank to rebut the presumption of correctness arising from the issuance of the deposit slip and entry in plaintiff’s passbook, we shall now consider the evidence adduced herein to determine whether defendant has discharged said burden.
As may be expected, the respective versions of the circumstances under which the deposit was made are seriously disputed by the litigants at bar. Plaintiff testified that on Monday, November 4, 1957 (after having counted his money about a dozen times), he went to defendant bank in Denham Springs, Louisiana, to deposit the sum of $10,670 cash (in bills of $10, $20, $50 and $100 denomination) some of which he carried in his billfold and the remainder of which was contained in a bag bearing the name of another bank. Without declaring the amount thereof he presented the bills to defendant’s Teller, Lancy E. Hill, Jr., who counted the money three times, registered the sum of the respective bills on an adding machine tape, exhibited the tape to plaintiff after announcing the total to be $10,670, prepared a deposit slip indicating a deposit of said amount, entered a like figure in a passbook bearing plaintiff’s name, and handed the deposit slip and passbook to plaintiff whereupon plaintiff left the bank.
It is conceded by plaintiff that three days later (on Thursday, November 7, 1957) he *868 received the following certified letter from defendant:
“Mr. F. N. Ash
“General Delivery
“Denham Springs, La.
“Dear Mr. Ash:
“On November 4, 1957, you made a deposit opening your account at our bank. Through error the amount showing on your deposit slip was $10,-670.00 which really should have been $6,170.00.
“Would you please bring in your duplicate deposit slip so that we can make the necessary adjustment.
“Sincerely yours,
“Livingston State Bank
“/sgd/ Lancy E. Hill
“Lancy E. Hill, Teller”
Likewise plaintiff acknowledges that upon receipt of the foregoing communication he immediately returned same to defendant by messenger with the following notation endorsed on the reverse thereof in his own handwriting:
“Dear Sir:
“I will be up to the Bank Saturday to see you, and get the deposit straiten out. I am unable to come now for I am at work.
“F. N. Ash”
On Saturday, November 9, 1957, plaintiff returned to the bank and after speaking with Hill about the matter was referred to H. Paul Odom, President of the Bank. According to plaintiff, in the center of the bank lobby in front of the teller windows and in the presence of Hill, Jack Odom (Cashier and Vice President), and an unidentified customer, Paul Odom asked plaintiff how much money plaintiff had deposited to which plaintiff replied he had brought in $10,700 and had kept $30 (a $10 and $20 bill). Upon being thus advised by plaintiff, Paul Odom became insulting and abusive and advised plaintiff to retain an attorney as he, Odom, had referred the matter to the F. B. I. Finally, plaintiff testified that an acquaintance, Doss McMorris, was standing outside the bank and upon observing that plaintiff was becoming quite angry motioned for plaintiff to leave whereupon plaintiff left the bank and did not return.
Lancy Edward Hill, Jr., Teller, testified that on November 4, 1957, he opened an account for plaintiff, F. N. Ash, Route 2, Den-ham Springs, Louisiana, who had not theretofore been a customer of the bank. Upon approaching Hill’s window, plaintiff handed him several stacks of bills which Hill counted separately as received and entered the total of each stack on his adding machine. Plaintiff first gave him a stack of twenties totalling $460 and while he was counting these bills plaintiff handed him $1,250 in fifties. In the course of his counting the fifties, Ash then handed him $500 in twenties. The same procedure was followed as plaintiff presented $2,200 in hundreds, an additional $1,250 in fifties and finally $500 in twenties and one $10 bill, which last item amounted to $510 but which Hill erroneously entered on the adding machine as $5,010, thereby resulting in an excess credit to plaintiff in the amount of $4,500. After striking the total he informed plaintiff the deposit aggregated $10,670, rolled up the tape exhibiting same to plaintiff who replied, “Yes, that’s right,” and turned to walk away. Hill called plaintiff back to the window to wait for his deposit slip and passbook and after preparing the deposit slip and passbook handed them to plaintiff who left the bank. Hill further testified that as the stacks of bills were handed him by plaintiff, he counted the money once and kept the stacks separate by alternately crisscrossing each stack. After Ash left the bank he prepared to move the bills and then for the first time realized the final stack of twenties was far short of containing $5,000. Without disturbing his arrangement of the bills he immediately summoned Jack Odom (Cashier and Vice President) whose station *869 was one window removed from Hill’s. After informing Odom of the error, Hill and Odom recounted the bills together twice and discovered that the final stack of twenties contained $510 rather than $5,010. In the presence of Odom he corrected the adding machine tape after writing in the margin of the tape the denomination of the bills constituting the entries thereon. Hill and Jack Odom then reported the occurrence to H. Paul Odom, President, who advised Hill to go in search of plaintiff to inform plaintiff of the error. Immediately Hill left the bank to seek plaintiff but being unable to locate plaintiff outside the bank returned and was instructed by the President to notify plaintiff by certified mail and that same day Hill, in compliance with Odom’s orders, wrote plaintiff the letter hereinabove set forth in full.
Hill’s testimony is corroborated by that of Jack and Paul Odom. The adding machine tape mentioned by Hill was introduced in evidence and identified by both Hill and Jack Odom. These latter two witnesses stated the tape contains the total of each separate batch of bills opposite which, in the margin, appears figures, in Hill’s handwriting, indicating the exact number of bills of each denomination making up the figures entered thereon. Also in evidence are the copy of the deposit slip and original passbook issued plaintiff, the corrected original of the deposit slip and the bank statement of plaintiff’s account showing the amount received by the bank and withdrawals therefrom.
According to Hill when plaintiff returned to the bank on the Saturday following the deposit, Hill referred plaintiff to Jack Odom who escorted plaintiff into the Board of Directors’ Room. He also stated discussion of the matter which ensued transpired in the Board of Directors’ Room, not the bank lobby. Hill had no knowledge of the nature of the conversation as he did not enter the room or speak further with plaintiff after referring plaintiff to Odom.
The testimony of Jack Odom is to the effect that upon plaintiff being referred to him on Saturday morning he requested plaintiff to come into the Board Room and then summoned the President.
Both President and Cashier stated positively that all discussion of the matter took place within the privacy of the Board Room with only those three present. The President acknowledged telling plaintiff that if Hill were $4,500 short, he, Odom, would have to report the matter to both the F.D. I.C. and the F.B.I. but denied that he insulted or embarrassed plaintiff and further denied he impliedly or expressly threatened to report plaintiff to the F.B.I. In addition, the Cashier testified that during the discussion in the Board Room, although plaintiff contended the original deposit slip was correct, plaintiff conceded there was a possibility he had paid some bills with part of his money and that although plaintiff could not recall doing so he, plaintiff, would check to see if that were possible and would let them know, but plaintiff never returned.
The question of the sufficiency of the evidence to rebut the presumption applicable in the case at bar is purely an issue of fact which addresses itself primarily to the credibility of the witnesses when weighed in the light of the facts and circumstances appearing in the record.
The record reveals that prior to the incident in question Hill, a man of family, had been employed by defendant bank for approximately one year in the capacity of Teller. He is highly regarded by his superiors who are confident of his veracity as well as his honesty and have seen fit to retain him as Teller. His explanation of the error was most plausible and is amply corroborated by the adding machine tape as well as the testimony of the Cashier, Jack Odom. Hill’s detection of the miscalculation was immediate and his reaction thereto spontaneous and natural. It was reasonable for him to summon his immediate superior, *870 the Cashier Odom, advise him of the mistake and enlist his aid in checking the deposit. Everything was done that could have been accomplished under the circumstances to forthwith advise plaintiff of the error. An immediate search of the area was made in an effort to locate plaintiff and when such effort proved fruitless the only remaining course of action available was pursued, namely, informing plaintiff of the mistake by letter dispatched to plaintiff at the address given by plaintiff upon opening the account.
On the other hand, plaintiff’s reaction to the letter received was not as one would ordinarily expect under the circumstances. His endorsement thereon to the effect he would be in to straighten out the matter without then objecting to or protesting the substantial correction of $4,500 proposed to be made by the bank is indeed strange and not in keeping with his subsequent contentions. Surely, the average individual would immediately and vociferously have complained of such action on the part of the bank if it were without foundation in fact. We also deem it of some significance that he did not at once report to the bank if he were satisfied no such error had been made. His explanation that he was at work and, therefore, could not sooner attend to the matter appears somewhat weak. A mistake of such magnitude would undoubtedly have prompted an individual of ordinary means (as the record reveals plaintiff to be) to immediately contact the depository bank regarding an alleged mistake in the amount of that involved herein.
A considerable portion of the evidence related to certain business transactions and sales consummated by plaintiff between July and November, 1957, offered by plaintiff in substantiation of his claim he indeed had the amount of the deposit in cash. Such testimony is of little value considering it was not incumbent upon plaintiff to establish that he possessed said sum but rather the burden rested upon defendant to prove the error alleged.
We believe the trial court correctly held defendant herein discharged the burden of proving the error claimed. Plaintiff, however, bears the burden of establishing by a preponderance of evidence the alleged humiliation and embarrassment caused him by the aforementioned employees of defendant bank. It is most significant that plaintiff has not produced one witness to corroborate his version of the alleged occurrence. In this connection plaintiff testified that he was unacquainted with those persons whom he observed in the lobby at the time the repeated insults were uttered and by this means sought to explain his failure to call a supporting witness. He did not, however, see fit to summon his acquaintance, Doss McMorris, who, according to plaintiff, although not present in the bank lobby, was in such position outside the building he could see plaintiff conversing with the Odoms in the lobby,and who, observing plaintiff’s apparent aggravation, motioned plaintiff to leave the bank. Although McMorris may not have been in position to testify concerning the nature of the conversation which took place between plaintiff and the Odoms he most certainly could have verified plaintiff’s statements that the discussion transpired in the open lobby.
Under the circumstances shown, we conclude the learned trial court properly rejected plaintiff’s demands in full.
Affirmed.