[Civ. No. 6577. First Appellate District, Division Two.—December 7, 1928.]

LEE ANTHONY, Appellant, v. CROCKER FIRST NATIONAL BANK (a Corporation), Respondent.

Sawyer & Sawyer and F. W. Sawyer for Appellant.

Morrison, Hohfeld, Foerster, Shuman & Clark and W. T. Fitzgerald for Respondent.

BURROUGHS, J., *pro tem.*—Plaintiff commenced this action to recover from the defendant the sum of $2,320. Defendant denied the alleged indebtedness and by way of cross-complaint prayed judgment against plaintiff in the sum of $500. The court denied plaintiff any relief and gave judgment for the defendant in accordance with the prayer of its cross-complaint. From said judgment the plaintiff appeals.

In support of his cause of action the plaintiff, Lee Anthony, testified that on the fifteenth day of June, 1926, he called at defendant's banking house in San Francisco and

asked Charles Pratt, Jr., an assistant cashier of the defendant, if they would purchase ninety-four interest coupons of Santa Fe Railway bonds, their face value being $2,820. That after examining said coupons Mr. Pratt stated they were the same as cash and the bank would buy them. The bank then issued to him a depositor's pass-book of the bank and he was given a credit of $2,820 therein, and he immediately drew a check thereon in the sum of $500. Mr. Pratt then introduced him to the cashier of the bank with directions to the latter to cash the check, stating that the check was all right and plaintiff had money there. The check was thereupon paid. The bank thereafter refused to pay any more checks or to pay him the balance due as shown by his pass-book. In sharp conflict with this testimony is that of Charles Pratt, Jr., who testified that there was no conversation as to the bank purchasing the coupons, and that it was explained to plaintiff the bank would take them for collection, and he assented thereto. That a depositor's pass-book was thereupon issued to plaintiff, in which he was given a credit for the face value of said coupons, but he was told not to check upon the account until the bank had made collection of the money. That plaintiff thereupon requested an advancement of $1,000 to pay some hospital bills, and that amount was refused. After further conversation the witness agreed to advance the sum of $500. The latter wrote out the check, had the plaintiff sign it, and then took the check himself, drew the money, and gave it to the plaintiff, again advising the latter not to draw any more money until the bank reported collection. The witness further testified that the coupons were returned to the bank as uncollectible. James O'Hanlon, coupon teller of the defendant bank, testified that he was called by Mr. Pratt and counted and listed the coupons, that when he was through counting them Mr. Anthony said to Mr. Pratt, " 'Well, can you give me some money on those coupons?' and Mr. Pratt said, 'Well, how much do you want?' and he said, 'Well, $1,000,' and Mr. Pratt objected. Mr. Pratt turned to me, and I said, 'Well, it will not be—the funds won't be in our hands for several days,' Mr. Pratt said to Mr. Anthony, 'It is not the usual practice to advance money on these, I could not give you one thousand dollars anyway. If it was a matter of a couple of hundred dollars I might accommodate you.' I

told plaintiff we would let him know when the coupons were collected.'' Paul Herbert Devine, an employee of the bank, testified that the coupons were tendered to the plaintiff and demand made upon him for the return of the $500 advanced to him by the bank. The letter of the bank forwarding the coupons for collection bears date June 16, 1926. Other evidence tending to corroborate that of Pratt and O'Hanlon is in the record, but the foregoing is ample to establish that certain findings of fact to the effect that it was agreed by the parties that said coupons were deposited for collection only, and that the $500 advanced to plaintiff was conditioned upon the bank collecting the coupons, and the further finding that plaintiff was instructed not to draw any further checks against said account until the bank reported collection, are based upon a substantial conflict in the evidence, and they will not be disturbed upon appeal. (2 Cal. Jur., p. 921, sec. 543, and cases there cited.) ▮ Indeed, counsel for appellant admits such conflict, but earnestly contends that such evidence should not have been admitted, that the passbook issued by the bank showing an unrestricted credit of $2,820 constituted a contract in writing and could not be varied by parol testimony. (Sec. 1856, Code Civ. Proc.) This claim is answered in the negative because there was no objection made to the evidence and, further, we are of the opinion that a pass-book does not constitute a contract in writing within the meaning of section 1625 of the Civil Code. In volume 3 of Ruling Case Law, section 160, page 531, it is said: ''An entry in a pass-book, however, is not a written contract within the rule that parol evidence is inadmissible to vary a written contract, but it is in the nature of a receipt and is *prima facie* evidence that the amount credited was received by the bank, and the entries may be explained or contradicted.'' We have been unable to find any California cases exactly in point, but *National Gold Bank* v. *McDonald*, 51 Cal. 64 [21 Am. Rep. 697], and *Ocean Park Bank* v. *Rogers*, 6 Cal. App. 678 [92 Pac. 879], hold that a credit made in a pass-book of a depositor, and nothing else appearing, no presumption is raised that the check is received as cash or otherwise than for collection. A number of California cases bearing upon the relation between a depositary bank and its depositor are cited by counsel for both appellant and respondent, but in each of

these cases there is some feature distinguishing it from the case at bar. These cases were decided upon a state of facts arising prior to 1925. In the latter year the legislature enacted section 16c of the California Bank Act (Stats. 1925, p. 513). So far as material to the question under discussion it provides as follows: "Any credit allowed by any bank organized under the laws of, or doing business in, this state, for any check, note or other instrument providing for the payment of money and drawn on or payable at the same bank in which it is deposited, or on or at any other bank, or on any other branch of the same bank, or on any other party, shall be only provisional, subject to final payment and to the receipt by the bank in which it is deposited of the funds in actual money, or in solvent credit on the books of any federal reserve bank, or on the books of any bank designated as a depositary by the forwarding bank; . . . and further provided, that when such check, note or other instrument providing for the payment of money is drawn on or payable at any other bank, or on any other party, it shall be sent in course of collection by the end of the next succeeding business day. . . . Until the proceeds of any check, note or other instrument providing for the payment of money shall have been actually received by the bank allowing such credit, in actual money, or in solvent credit on the books of any federal reserve bank, or on the books of any bank, designated as a depositary by the forwarding bank, such check, note or other instrument may be charged back, or collected from, the depositor from whom it was received, regardless of whether or not the check, note or other instrument itself be returned. . . . Any provision of this section may be modified or set aside by an agreement in writing between any such bank and any party from whom any check, note or other instrument is received for collection, deposit or other purpose."

So far as we are advised this section of the Bank Act has never been construed, but in construing a similar statute of the state of Florida in *Federal Reserve Bank* v. *Malloy*, 264 U. S. 160 [31 A. L. R. 1261, 68 L. Ed. 617, 14 Sup. Ct. Rep. 296], the supreme court of the United States held that the relation of the payee to the initial bank of deposit was controlled by the Florida statute, with respect to which they must be presumed to have dealt with each

other. Applying the principle of that decision to the instant case, section 16c, *supra*, became a part of the terms under which the deposit was made. This conclusion is further strengthened by the following indorsement appearing on the inside page of the pass-book: "The rights and obligations of the depositor are defined by the laws of the state of California and the United States of America." In the absence of an agreement in writing to the contrary, the coupons in suit having been forwarded for collection on the day following the deposit, and being uncollectible, the defendant bank, by the terms of the statute, was entitled to charge the worthless paper so deposited to the plaintiff's account. We further hold that the trial court having held the transaction to have been a deposit of the paper for collection only, and not one of sale, irrespective of section 16c, *supra*, the defendant was entitled to judgment.

The judgment is therefore affirmed.

Sturtevant, J., and Nourse, Acting P. J., concurred.