OCEAN COUNTY NATIONAL BANK and MYRTLE MATTHEWS STILLWELL, executors and trustees under the last will and testament of Herman P. Stillwell, deceased, complainants-appellants,

*v.*

JOSEPH STILLWELL, MILLER LUMBER CO., INC., a body corporate, and ARTHUR J. STRICKLAND, assignee and trustee for the benefit of creditors of Joseph Stillwell, defendants-respondents.

[Submitted October term, 1937. Decided February 10th, 1938.]

338

*Mr. Owen C. Pearce* and *Messrs. Durand, Ivins & Carton* (*Mr. J. Victor Carton* and *Mr. Robert V. Carton,* of counsel), for the appellants.

*Mr. Harry E. Newman,* for the respondents Arthur J. Strickland, assignee and trustee, and Joseph Stillwell.

*Mr. E. Garfield Gifford,* for the respondent Miller Lumber Co., Inc.

The opinion of the court was delivered by

HEHER, J.

The challenged decree dismissed complainant's bill to foreclose a mortgage bearing date December 2d, 1924, made by

defendant Joseph Stillwell, to his son, Herman P. Stillwell, purportedly given to secure payment of a bond bearing even date therewith, made by the father to the son, conditioned for the payment of $10,000 on December 2d, 1925, with interest thereon at the rate of six per cent. per annum. The mortgage recited that the father was "justly indebted" to the son in that sum.

The bill is in the usual form. It alleges the execution and delivery of the mortgage to secure the "debt" thus evidenced by the bond, the death of Herman on January 9th, 1930, testate, the conveyance of the lands on July 22d, 1931, by Joseph to Arthur J. Strickland, as assignee and trustee for the benefit of his creditors, and the amount of the matured mortgage debt to be "the principal sum of $10,000 with interest thereon from December 2d, 1929."

The original answer filed by Joseph's assignee pleaded want of consideration and the non-existence of the claimed mortgage debt, either in the amount specified or in any sum whatsoever. A "supplemental" answer (not printed in the state of the case, but referred to therein as having been filed shortly before the final hearing) averred, by way of separate defense, that the "consideration for the mortgage  *  *  * was a contemporary agreement that the mortgage was given to secure Herman Stillwell from any loss by reason of his delivery of certain securities to" Joseph; and that Joseph "performed the terms of said agreement and has become entitled thereunder to the surrender of said bond and mortgage, which right has now accrued to the assignee, Arthur J. Strickland." While his answer has not been printed, the state of the case shows that Joseph also answered, denying the execution and delivery of the bond and averring total failure of consideration; and, at the final hearing, his counsel asked for and was granted leave "to include" him "in the answer" filed by his assignee.

The Miller Lumber Co., Inc., is the holder of a mortgage covering the same premises, recorded subsequent to complainants' mortgage. By a stipulation it is shown that this defendant also answered the bill of complaint. The answer is not printed in the state of the case.

On the final hearing, complainants proved the execution of the bond and mortgage (they were introduced in evidence), the death of Herman and the probate of his will, the finding of the bond and mortgage—with no endorsement of payment of either principal or interest—in a safe deposit box in com-. plainant bank rented in the names of Joseph and Herman Stillwell, the non-payment of either principal or interest to the executors and trustees, and rested. The answering defendants thereupon proved—and introduced in evidence— an agreement between Herman and Joseph, signed by the former, and delivered contemporaneously with the bond and mortgage, reciting that Herman "has furnished" Joseph "with certain valuable securities of the value of Ten Thousand Dollars or more, for the use of" Joseph "in and about his business," and the "desire and intention of" Joseph "to protect" Herman "from any loss by reason thereof," and binding Joseph to execute and deliver to Herman, "upon the execution hereof," a bond and mortgage in the sum of $10,000, payable in one year with interest at the rate of six per cent., covering lands in the borough of Mantoloking (and described in the mortgage), "as security for the return of the said securities, and for the purpose of protecting" Herman "from any loss in connection therewith." Herman therein undertook to "safely keep and hold the said bond and mortgage, for the purpose thereof  *  *  *," and to "promptly surrender the same to" Joseph, "upon the return of the said securities  *  *  *, within a reasonable time; otherwise the said bond and mortgage shall become the property of" Herman "absolutely."

Complainants invoked section 4 of the Evidence act (*Comp. Stat. 1910 p. 2218*) to exclude testimony by Joseph—proffered by the answering defendants—relating to pertinent conversations and transactions with his deceased son. The witness was, however, permitted to testify that, at the time of his son's death, he did not "hold any securities—valuable securities or otherwise, that formerly belonged to Herman;" and the learned vice-chancellor, in an oral deliverance, ruled that, inasmuch as the mortgage was given to secure Herman

"against the non-return of the securities" loaned by him to his father, and the proof was that, at the time of Herman's death, Joseph "had no such securities in his possession," the necessary inference was that "whatever securities Herman had entrusted to him prior to that time had been returned to him," and there was therefore "nothing due on the mortgage."

The premise does not support the conclusion. *Non sequitur.* Joseph's lack of possession of the securities is not proof of their return to Herman. The very purpose of the bond and mortgage, as disclosed by the underlying agreement, was to protect Herman from loss resulting from the "use" of the securities by Joseph "in and about his business;" and it goes without saying that Joseph would also be answerable for his conversion of the securities or the consequences of any other wrongful act relating thereto.

Yet we think the decree should be sustained. In a foreclosure suit the burden of proof of payment or other satisfaction of the mortgage ordinarily rests upon him who asserts it by way of defense. But that rule has its reasonable exceptions; and it is not, for reasons presently to be stated, applicable in the peculiar circumstances of the case in hand. It is grounded in the doctrine that, in the fair apportionment of the burden of proof, considerations of fairness dictate that a specific logical and reasonable inference from a particular fact, or from particular evidence, should be classified by rule of law as a presumption, *i. e.,* its subject-matter considered as a fact established by inference until disproved by evidence or a stronger presumption, so as to place upon the adversary party, as a legal consequence, the duty of going forward with the evidence on pain of failure. It is this legal consequence of a presumption that distinguishes it from a mere inference.

Thus it is that, in a foreclosure suit by the legal representative of a deceased holder of a mortgage, the deceased's possession of the bond (or other obligation secured) and mortgage at the time of his death is deemed *prima facie* evidence of the non-payment of the mortgage debt. *Maddock* v. *Connolly, 82 N. J. Eq. 609; Bower* v. *Bower, 78 N. J. Law 387.* See, also, *Harrison* v. *New Jersey Railroad and Transporta-*

*tion Co., 19 N. J. Eq. 488, 500; 41 C. J. 793.* And, in such circumstances, the recital of the indebtedness contained in the bond and mortgage is *prima facie* evidence of the fact so stated—sufficient until disproved. Such are wholly natural and logical inferences; and, by reason of their inherent probative strength, they are deemed by the law, in the apportionment of the burden of proof, as meriting the classification of presumptions—facts to be deemed proved until disproved.

But, by the same token, it is the established fact of the holder's possession of such evidences of the debt in his own right, adversely to the mortgagor—a quality normally deducible from the possession itself—that gives rise to the inference—irresistible, standing alone—of the non-payment of the obligation thus exhibited and exalts it to the status of a presumption in law, entailing the legal consequences adverted to. It is this that imposes upon the adversary party the duty of producing evidence, as distinguished from a pure inference relieving the proponent of the duty of going forward without placing that burden upon his opponent. Compare *Bower* v. *Bower, supra.* See, also, *Wigmore on Evidence (2d ed.)* § *2494.* Where, by reason of a countervailing circumstance, the natural probative worth of the inference is weakened, the law does not raise it to the level of a presumption.

In the apportionment of the burden of proof there is no specific formula automatically resolving every case. To borrow the language of Professor Wigmore, there is no "general solvent for all cases. It is merely a question of policy and fairness based on experience in the different situations. * * * There is no one principle, or set of harmonious principles, which afford a sure and universal test for the solution of a given case. The logic of the situation does not demand such a test; it would be useless to attempt to discover or to invent one; and the state of the law does not justify us in saying that it has accepted any. There are merely specific rules for specific cases, resting for their ultimate basis upon broad and undefined reasons of experience and fairness." *Wigmore on Evidence* § *2486.*

Here, there was a variance in matter of substance between the pleaded cause of action and the proofs. The bill charged that the bond and mortgage imposed upon the obligor the absolute obligation to pay $10,000 on December 2d, 1925, with interest at the specified rate, payable semi-annually, while the basic agreement—not referred to therein—reveals that he assumed a substantially different undertaking, i. e., to return unspecified securities, after making "use" of them "in and about his business," and to indemnify his son "from any loss in connection therewith." By the express terms of that agreement, the bond and mortgage were not to "become the [absolute] property of" the son unless return of the securities was not made "within a reasonable time." Thus there was a conditional delivery of the bond and mortgage. It is to be observed, parenthetically, that the underlying agreement did not obligate the obligor to make reimbursement for any and all loss or depreciation of the securities, no matter how occurring. The rights and duties of the parties are delimited by that instrument.

These being contemporary instruments, the agreement, in virtue of its specific character, is of necessity to be viewed as primary and therefore as qualifying the terms of the bond and mortgage. In the ascertainment of the common intention, these documents are on well settled principles to be construed together as embodying the entire contract. Even parol evidence is admissible to identify the debt intended to be secured—to establish the true object of the mortgage in contradiction of the purpose disclosed by the condition. Such evidence is ordinarily permissible to apply the written contract to its subject-matter. *Pittsburgh Plate Glass Co.* v. *Millville Improvement Co., 59 N. J. Eq. 527; affirmed, 61 N. J. Eq. 671; Campbell* v. *Perth Amboy Shipbuilding, &c., Co., 70 N. J. Eq. 40, 59; affirmed, 71 N. J. Eq. 302; Montclair Savings Bank* v. *Partridge, 92 N. J. Eq. 28; affirmed, Ibid. 460; Wilbur* v. *Jones, 80 N. J. Eq. 520.* See, also, *Dieckman* v. *Walser, 114 N. J. Eq. 382.*

As stated, the bond and mortgage were found by the executors in a safe deposit box jointly rented and used by father

and son. And the son, at the time of his decease—it was a sudden, accidental death—held three separate powers of attorney executed by his father—the first, dated December 26th, 1923, authorizing him, in his father's name, to make, draw, sign and endorse checks, promissory notes and bills of exchange; the second, dated April 15th, 1925, empowering him to sell and convey his father's real estate, and to make, execute and deliver in his name deeds of conveyance therefor; and the third, dated October 11th, 1927, investing him with general authority to manage his father's "business and affairs," his "real estate, contracts and all manner and forms of real and personal property now possessed by" him, or thereafter to be possessed, and to "sign, seal and deliver any and all manner of papers, instruments, deeds, bonds, mortgages, promissory notes and checks." For some years before his death, the son had been employed by the father in the capacity of general manager of his business at a salary ranging from $35 to $45 per week; and the evidence reveals that most of the checks issued during the period embraced by these powers of attorney, in payment of obligations incurred in the transaction of the father's business, were signed by the son, in his father's name, as attorney.

We are of opinion that in these circumstances a presumption of non-payment did not arise from the mere production of the bond and mortgage. In this situation, the special rule—confined to a limited class of cases—that the burden of proof fairly rests on the party who presumably has peculiar means of knowledge of the fact, was not invocable against defendants. As pointed out, complainants, citing the prohibition of section 4 of the Evidence act, *supra,* closed the mouth of Joseph. And the primary right and interest to be barred by the decree were not in him, but in his assignee, representing his creditors. Furthermore, his co-defendant, Miller Lumber Co., Inc., claiming under a mortgage recorded subsequent to the one in suit, had an interest superior to his.

Moreover, assuming the claimed presumption of non-payment thus arose, it was neutralized—and the legal consequences alluded to removed—by the facts adduced in evidence.

At the least, its subject-matter was thereby reduced to the status of a mere permissible inference, with the burden of proof resting on complainants. And, in view of the scope of the business relationship between the father and son and all the facts and circumstances, the burden so cast upon complainants was not sustained. It suffices to add to what has been said respecting the facts that, in 1927 and 1928, the father transferred to the son three certificates of bank stock of the undisputed value of $8,000. If the claimed obligation then existed, it is not to be presumed that this was an unconditional gift—a voluntary transfer not in satisfaction of loss sustained by the son as the result of the father's failure to perform the obligation evidenced by the agreement; rather the contrary. In this connection, it is worthy of note that not long before the delivery of the bond and mortgage the father conveyed to the son an unencumbered dwelling house worth $7,500. The question of the admissibility of this testimony under the cited provision of the Evidence act, *supra,* was not raised by a timely objection; nor was it made the subject of a motion to strike out. And a salesman, who in 1927 and 1928 made inquiries of Herman as to his father's financial condition in relation to requests for credit in substantial sums, testified to statements by Herman tending to show that he did not regard the mortgage as a subsisting obligation. As said in *Kline* v. *McGuckin, 25 N. J. Eq. 433:* "The case is one where doubts and uncertainties should operate against the mortgagee and not in his favor."

These considerations lead to a dismissal of the bill; and the decree is accordingly affirmed.

*For affirmance*—PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, HETFIELD, DEAR, WELLS, WOLFSKEIL, RAFFERTY. JJ. 11.

*For reversal*—None.