74 N.J. Super. 86 (1962)
180 A.2d 532
F.I.N.N.E., INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
NATIONAL STATE BANK OF NEWARK, A CORPORATION, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued April 9, 1962.
Decided April 27, 1962.
*87 Before Judges CONFORD, GAULKIN and KILKENNY.
Mr. Robert F. Darby argued the cause for the appellant (Messrs. Darby & McDonough, attorneys).
Mr. Bernard I. Kramer argued the cause for the respondent.
*88 The opinion of the court was delivered by GAULKIN, J.A.D.
This is an appeal from a judgment of the Chancery Division directing defendant bank to reopen plaintiff's checking account and restraining defendant from crediting to itself the $749.39 in that account.
Plaintiff, F.I.N.N.E., Inc. maintained a checking account with the National State Bank of Newark (National), the defendant. In June 1959 a check for $3,041 was deposited in the account of plaintiff, issued by the United States Treasurer to one Pearl Bartley. The indorsement of Pearl Bartley was a forgery, but this fact was not discovered by anyone for about two years, and it is not suggested that plaintiff was aware of the forgery at the time of the deposit.
On October 11, 1961, after learning of the forgery, plaintiff drew a check on the account to its attorney for $500 for past services. The attorney said this was done "[b]ecause, I having been advised of this situation and, in fact, having had an interview with the Secret Service Department and my client in my office, in which these facts were brought out and testimony was taken from the principal of the corporation as to how this thing came about, there was no problem in terms of my client being involved. I said, `You owe me some money; you had better pay me.'"
On October 17, 1961 the check was returned with the notation "To charge off balance of your account and close it out for a partial refund of Treas. Check #13,610, 784, dated 6/1/59 returned for refund, reason: Unauthorized Endorsement, Estate not entitled. Check was payable to Pearl Bartley, and deposited by you to your account." On the same date National wrote plaintiff as follows (emphasis ours):
"Enclosed is a duplicate debit advice in the amount of $749.30, the balance remaining in your account, which has been attached as partial settlement for the refund requested by the Treasury Department for check No. 13,610, 784 in the amount of $3,041.00 returned for reason of forged endorsement.
This will close out your account with us."
*89 The demand for the refund had been made by the Treasury Department upon the bank on July 11, 1961.
Plaintiff then filed its complaint in the Chancery Division, demanding judgment:
"(a) That the defendant be restrained and enjoined from closing plaintiff's account and from refusing to honor checks drawn upon such account by plaintiff;
(b) that defendant be restrained and enjoined from crediting to its own order such monies as are presently in plaintiff's account.
(c) Damages."
Upon the filing of the complaint plaintiff procured an order to show cause "why the judgment demanded in the complaint filed herewith should not be granted in accordance thereto." On the return of the order to show cause the judgment appealed from was entered. This was improper. The use of an order to show cause in lieu of summons is permitted only in the instances set forth in R.R. 4:85-1. Furthermore, there was no proper foundation nor adequate reason for an order to show cause, even if proceeding by order to show cause had been otherwise proper. The only affidavit before the court was the one annexed to the complaint, and that was in common form, upon "knowledge, information and belief," and obviously hearsay in important respects. Beyond that, no necessity for interim relief was shown and none was possible, because, as the complaint alleged, the account had already been closed and the money taken by the bank. Transcending all of the foregoing, there was no equity in the complaint. The relationship between plaintiff and defendant was that of creditor and debtor, and plaintiff's grievances if any (including its allegations of slander and damage to its credit) were remediable by a judgment for money damages. The case should have been transferred to the County district court, as defendant demanded. However, now that the matter is before us, we shall decide it on the merits.
When plaintiff deposited the check for $3,041 in its account it warranted that it had good title to the instrument, *90 though it appears that no officer of the corporation endorsed it. R.S. 7:2-65. That warranty is relied on by defendant here.
The court below rested its decision on John Wills, Inc. v. Citizens Nat. Bank of Netcong, 125 N.J.L. 546 (E. & A. 1940), a case holding that a bank must give an endorser the required notice of dishonor in order to fix his liability and charge a sum due on a dishonored note against the endorser's account. But in the present case National did not debit the account of plaintiff because of mere dishonor of the deposited instrument, but because of the breach of plaintiff's warranty. There is no suggestion anywhere in the Negotiable Instruments Law that the provisions for notice of dishonor (R.S. 7:2-89 et seq.) are to be applied as conditions to liability for breach of warranty. To do so would completely vitiate whatever protection is offered by the endorser's warranty here questioned, the breach of which would almost necessarily escape the attention of the drawer or drawee until well after the period provided for notice of dishonor.
Though the precise issue does not appear to have been litigated in our courts, cases under the Negotiable Instruments Law from other states leave no room for doubt that an endorser or, as here, one who negotiates an instrument by delivery, is liable for the amount of the instrument if it later develops that the instrument was paid on a forged endorsement. Bergman v. Avenue State Bank, 284 Ill. App. 516, 1 N.E.2d 432 (Ill. App. Ct. 1936); Fidelity Nat. Bank of Baton Rouge v. Vuci, 224 La. 124, 68 So.2d 781 (Sup. Ct. 1953); American Exchange Nat. Bank v. Yorkville Bank, 122 Misc. 616, 204 N.Y.S. 621, 627 (Sup. Ct. 1924); Stein v. Empire Trust Co., 148 App. Div. 850, 133 N.Y.S. 517 (App. Div. 1912); Jones Bros. v. Citizens' Nat. Bank, 106 Okl. 162, 233 P. 472 (Sup. Ct. 1923); 7 Am. Jur. § 598, p. 433; 6 Michie, Banks and Banking, c. 10, § 84, pp. 181-182. Plaintiff never acquired a valid title to the check it deposited with defendant, and *91 consequently gave the bank nothing of value in return for the credit which it obtained and most of which it has withdrawn.
Plaintiff argues that defendant has not suffered injury from the breach of warranty, because defendant has not paid the Treasury Department, and the Treasury Department has not yet sued National for reimbursement. But the Treasury made its claim against the defendant for reimbursement, and plaintiff does not contend that defendant is not obliged to pay the claim, or that it will be able to avoid payment. Cf. Clearfield Trust Co. v. United States, 318 U.S. 363, 369, 63 S.Ct. 573, 87 L.Ed. 838 (1943); United States v. National Exchange Bank of Providence, 214 U.S. 302, 29 S.Ct. 665, 53 L.Ed. 1006 (1909). The breach of warranty by plaintiff has directly resulted in defendant's obligation to repay the Treasury on the forged instrument.
In Fidelity Nat. Bank of Baton Rouge v. Vuci, supra, in which the collecting bank sued its depositor, it was argued that the bank did not have "a real and actual interest" in the cause of action, as required of a plaintiff under Louisiana law, because the plaintiff bank had not yet paid the drawee bank. The Louisiana Supreme Court answered (68 So.2d, at p. 784):
"The only real question is whether the plaintiff can bring this suit before it has actually paid the drawees, its endorsees, the amount of the six checks. Demand for payment of each check has been made on the plaintiff, and we have concluded that this demand for payment under the facts of this case is sufficient to constitute an interest in the plaintiff bank to permit it to bring this action. We consider the defendant's contention unduly technical and one for the purpose of delay only, because there is absolutely no question under the facts of the case of his ultimate liability. The plaintiff paid the checks to the defendant as an accommodation, and on the faith of his assurance that they were good. We see no good reason to require that it wait to be sued, or that it actually pay the drawees before it sues the defendant, because an interest to protect itself against loss arose as soon as demand was made on it." *92 See also American Exchange Nat. Bank v. Yorkville Bank, supra, 204 N.Y.S., at p. 631.
Plaintiff asks the court to enjoin the exercise by defendant of its rights until reimbursement is made by defendant, or at least until such time as action for reimbursement is instituted by the Treasury. But by that time plaintiff may well have withdrawn all of its funds from its account, further imperiling the bank's likelihood of heading off a complete loss on the transaction.
We need not discuss defendant's contentions that the alleged insolvency of F.I.N.N.E., Inc. fortifies its right to set off its claim against plaintiff's account whether such claim is matured or not, for we hold that defendant's rights had already matured when it seized the balance in the account. Indeed, defendant's rights may have "matured" the instant defendant credited plaintiff's account with the amount of the deposited paper to which plaintiff had no title, but we need not decide that question now.
The judgment below is reversed with direction to enter judgment for defendant.