C. S. HICKS *v.* THE EXCHANGE BANK AND TRUST COMPANY

5-5815                                478 S.W. 2d 54

Opinion delivered March 13, 1972
[Rehearing denied April 24, 1972.]

*G. E. Snuggs,* for appellant.

*Spencer & Spencer,* for appellee.

CARLETON HARRIS, Chief Justice. The facts in this litigation are rather unusual. Felix Hicks died on February 12, 1968, and among his effects was a savings account passbook issued by the Exchange Bank and Trust Company. This passbook reflected a deposit in the name of C. S. Hicks in the amount of $175.00, dated October 8, 1932, and withdrawals of $25.00 each on November 25, 1932, and December 3, 1932, thus leaving a balance of $125.00. On June 26, 1970, C. S. Hicks, appellant herein, instituted suit against the Exchange Bank and Trust Company, appellee, asserting that, including accrued interest at the rate of 3 percent compounded semi-annually, the bank was indebted to appellant in the total amount of $401.00. It was asserted that the bank had refused to permit the withdrawal of this amount from the savings account, claiming that the account had been closed; that Hicks had been damaged in that amount, and should also have punitive damages in the sum of $1,000.00 by virtue of the bank's violation of its provisions in its contract with him. The bank answered, admitting that at one time there was such an account, but it was asserted that the account had been closed for many years and that Hicks had been aware of that fact. On trial, the Union County Circuit Court, sitting as a jury, held with the bank and dismissed appellant's complaint. From the judgment so entered, appellant brings this appeal.

Appellant's claim is predicated on section 5 of the "Rules of Savings Deposits" which appears in the passbook. That portion relied on reads as follows:

> "Withdrawals of deposits, and the interest thereon, may be made by a depositor personally. No withdrawals of deposits or interest shall be made unless the depositor's pass book be produced and the withdrawal entered therein."

The balance of that section reads as follows:

"Provided, however, that if the depositor shall prove to the satisfaction of the officers of the bank that his pass book has been lost, stolen or destroyed, and shall furnish to the Bank satisfactory indemnity against any claim which may at any time be made against the Bank on account thereof, the officers of the Bank may make payment to the depositor without the production of such book."

Proof on the part of appellant, 94 years of age, is rather vague, and conflicting to some extent. Hicks testified that he put $175.00 in the bank, but he subsequently stated that his brother made the deposit "through me". He said that he received the two $25.00 items but did not get the $125.00. Appellant also testified that he or his wife had possession of the passbook at all times. He did not remember when he had been in the bank but he stated "I ain't never did no business with that bank". Hicks was asked if he had ever taken the passbook to the bank and the record then reveals the following:

"A. No, I never did. You see, my brother, he put that money in there for me. He put it there for me and he knew whenever I wanted anything for the baby,[1] you see, he'd just go and get it.

Q. I see. The brother put the money in for you and then when you needed anything, he'd go and get it out for you?

A. That's right.

Q. Now the bank book shows that $25.00 was taken out in 1932. Did your brother take that out for you?

A. I'm quite sure he did.

Q. You didn't go in and take it out?

---

[1]Appellant testified that his wife was taking care of Felix's wife's baby at the time.

A    I'm quite sure he did.

Q.   You didn't go in and take it out?

A.   (The witness shakes his head in negation.)

Q.   And it shows that $25.00 was taken out again in 1932. Did your brother take that out for you?

A.   He taken the money out. He did whatever I wanted.

Q.   He went in and got the money for you?

A.   Yes.

Q.   Well, did he keep the book so that he could get the money out?

A.   Oh, yes."

Exie Hicks, wife of appellant, 82 years of age, testified that she knew nothing about the deposit, other than what was shown in the book, which had been obtained after the death of Felix. She didn't know whether all the money had been drawn out or not, other than what the passbook reflected. Irma Jean Massey, a daughter, stated that the book was brought to her father a few days after the death of Felix, and that her husband went to the bank about six weeks after the uncle's death to see about it.

N. G. Hammond, an employee of the bank, testified that he was also associated with appellee in 1932; that he knew Felix Hicks, who did quite a bit of business with the bank; that he did not know C. S. Hicks. Ledger sheets were introduced which reflected that a deposit was made on October 3, 1932 for $175.00, withdrawal on November 25 of $25.00, withdrawal on December 3 of $25.00, and withdrawal of the balance of $125.00 on December 31 of same year. The witness stated that the account was closed at that time. Hammond said that he did not remember the particular transaction, and in response to interrogation, he testified that "a customer could come in, didn't have his book, and if he was well known to the

bank they would go ahead and pay the check if the signature corresponded thereon."

As earlier stated, appellant's case is predicated entirely on the passbook and on the other hand, appellee's defense is largely based on the ledger sheet. There are circumstances however that favor appellee, the principal one being that it is extremely unusual for any person to make no withdrawals from a savings account for over 36 years, and, what is more unusual, to make no inquiry *about the status of the account,* particularly when there is no evidence that any bank statements were ever sent to C. S. Hicks at his address shown in the book; nor is there evidence that any interest was ever credited to the account, or paid to anyone. Likewise, it is very much out of the ordinary for one, who has a savings account, to permit his brother to keep the passbook for that period of time. In 10 Am Jur 2d Banks § 454 p. 425, it is said:

> "It seems that the presumption of payment from lapse of time may apply to a bank deposit. Thus, where no demand for payment of a checking account had been made for 23 years, it was held that the presumption of payment applied. While it is conceded that the presumption may be overcome, it is said that clear and convincing proof is required to overcome it and entitle the depositor to recover where no claim or demand has been made for over 20 years."

It seems clear that the finding of the passbook among the effects of Felix Hicks precipitated this litigation. It is established that the money was placed in the bank by Felix, and the first two withdrawals were made by him. The record does not reflect whether Felix was authorized to draw on this account. Hammond testified that in those days, if the bank knew a customer, it would permit a withdrawal without the book being presented. Since Felix had made the two previous withdrawals, and there had been no complaint, it is easy to see that a third request for withdrawal by Felix would have been honored. There are a lot of surmises that could be made. But it must be remembered that here, on appeal, we are only concerned with whether there was substantial evidence to support the ruling by

the trial court. We hold that the ledger sheet showing the account closed, together with the other circumstances herein mentioned, constitutes substantial evidence to support the judgment.

Affirmed.