670 A.2d 509

LINDA PAGANO, ADMINISTRATRIX OF THE ESTATE OF ROSE GUARINO, PLAINTIFF–RESPONDENT, v. UNITED JERSEY BANK, DEFENDANT–APPELLANT, AND PEOPLES TRUST OF NEW JERSEY, ABC COMPANY, DEF COMPANY AND JOHN DOE (SAID NAMES BEING FICTITIOUS AND UNKNOWN), ITS SERVANTS, AGENTS AND/OR EMPLOYEES, JOINTLY, SEVERALLY OR IN THE ALTERNATIVE, DEFENDANTS.

Argued October 11, 1995—Decided January 22, 1996.

222

*James J. Kreig* argued the cause for appellant (*Marian B. Copeland,* attorney; *Mr. Kreig* and *Richard J. Grossi,* of counsel; *Ms. Copeland,* on the briefs).

*Louis Mangano* argued the cause for respondent.

*Michael F. Spicer* argued the cause for *amicus curiae,* New Jersey Bankers Association (*Jamieson, Moore, Peskin & Spicer,* attorneys).

The opinion of the Court was delivered by

COLEMAN, J.

The issue raised by this appeal is whether the common-law rebuttable presumption of payment after a lapse of twenty years should be applied to a passbook-savings account when the issuing bank has no record of the account and has never stamped or otherwise marked the passbook canceled or closed. The Appellate Division held that the presumption was inapplicable. *Pagano v. United Jersey Bank*, 276 *N.J.Super.* 489, 648 *A.*2d 269 (1994). We agree and affirm.

## I

On July 10, 1970, Rose Guarino deposited $4,400 into Peoples Trust Company of New Jersey (Peoples Trust), a state-chartered commercial bank. She received a "pyramid passbook account" in her name reflecting the deposit. On May 1, 1975, Peoples Trust became United Jersey Bank (UJB). Fifteen years later, Rose Guarino died of cancer. She had been healthy until her final illness and resulting death.

In August or September 1990, decedent's daughter, Linda Pagano discovered the passbook in decedent's bedroom dresser. The passbook did not reflect any transactions other than the initial deposit. No other evidence related to the account was found among the decedent's personal belongings.

Within one week after finding the passbook, Pagano presented it to UJB and requested payment of the full deposit plus accumulated interest. UJB denied the request, stating that because it had no record evidencing the existence of the account, it was presumed paid.

Pagano, as administratrix of her mother's estate, instituted the present litigation to compel payment. UJB defended on the basis that the claim was barred by the six-year statute of limitations, *N.J.S.A.* 2A:14–1, and by virtue of the common-law rebuttable presumption of payment after a lapse of twenty years. The trial court rejected the statute of limitations defense and denied UJB's

motion to charge the jury on the presumption of payment. The jury rejected UJB's claim that payment had been made and returned a verdict of $4,400 in favor of Pagano. The trial court ordered that interest in the amount of $9,022.98 be added to the judgment.

The Appellate Division affirmed, holding that the cause of action did not accrue until Pagano's demand for payment was rejected. It also held that the common-law presumption of payment was not applicable to passbook-saving accounts. *Pagano, supra,* 276 *N.J.Super.* at 496–98, 648 *A.2d* 269. We granted UJB's petition for certification. 142 *N.J.* 446, 663 *A.2d* 1354 (1995).

## II

UJB argues that the Appellate Division should have applied the common-law rebuttable presumption of payment to the savings account. It contends that the presumption of payment should arise in favor of a bank when a passbook is produced that shows no entries for at least twenty years, and the bank has no record of the account.

In support of this argument, UJB asserts that New Jersey has recognized the presumption of payment doctrine for over 200 years.

## –A–

New Jersey has recognized a rebuttable common-law presumption of payment of a debt based on the lapse of twenty years in areas other than bank deposits for over two centuries. *See, e.g., Mathews v. Kelly,* 70 *N.J.Eq.* 796, 796–97, 67 *A.* 1075 (E. & A. 1906) (applying presumption to guardian's disposition of ward's funds twenty years after final accounting); *Magee v. Bradley,* 54 *N.J.Eq.,* 326, 329, 35 *A.* 103 (Ch.1896) (applying presumption of payment to mortgage); *Peacock v. Newbold's Exr's.,* 4 *N.J.Eq.* 61, 70–72 (Ch.1837), *aff'd o.b.,* 5 *N.J.Eq.* 535 (E. & A. 1845) (applying presumption of payment to legatee); *Executors of Wanmaker v.*

*Van Buskirk,* 1 *N.J.Eq.* 685, 693 (Ch.1832) (applying presumption of payment to mortgage); *Mease v. Stevens,* 1 *N.J.L.* 495, 496 (Nisi Prius 1793) (applying presumption of payment to debt involving bond). *Cf. Kushinsky v. Samuelson,* 142 *N.J.Eq.* 729, 731–32, 61 *A.*2d 287 (E. & A.1948) (applying presumption of *non-payment* of mortgage); *Conlon v. Hornstra,* 82 *N.J.L.* 355, 357, 83 *A.* 183 (Sup.Ct.1912) (applying presumption of *non-payment* of bond); *Guerin v. Cassidy,* 38 *N.J.Super.* 454, 460, 119 *A.*2d 780 (Ch.Div. 1955) (applying presumption of *non-payment* of debt); *Betts v. Van Dyke,* 40 *N.J.Eq.* 149, 152 (Ch.1885) (finding the presumption of payment of late claim to legatee was rebutted).

 Historically, the rebuttable presumption of payment originated in equity by analogy to the English statute of limitations as early as the statute of 32 Henry VIII, C.F. (1540), and was later made part of the common law. *Kyle v. Green Acres at Verona, Inc.,* 44 *N.J.* 100, 103, 207 *A.*2d 513 (1965); *Metlar v. Williams,* 86 *N.J.Eq.* 330, 332, 97 *A.* 961 (Ch.1916). A statute of limitations bars a claim after the passage of a specified time. The common-law rebuttable presumption of payment, on the other hand, is used as evidence, based on the lapse of time, to create a rebuttable inference that the debt has been paid or otherwise satisfied. The presumption is based on the assumption that a person, before the passage of twenty years, would have recovered what belonged to that person unless prevented by some impediment. *Gulick v. Loder,* 13 *N.J.L.* 68, 71–74 (Sup.Ct.1832). The persuasiveness of the presumption may be strengthened or diminished by evidence supporting or contradicting the significance of the lapse of time.

Earlier cases applying the presumption recognized that it was based on social policy and convenience. That policy was established, not because of a belief that payment was actually made, but because available proofs to establish either payment or non-payment after the passage of so much time was simply unreliable, if indeed available. *Magee, supra,* 54 *N.J.Eq.* at 329–31, 35 *A.* 103. Another acknowledged policy was the need to establish who had the right to possession primarily through foreclosure. *Execu-*

*tor of Wanmaker, supra,* 1 *N.J.Eq.* at 692. Whenever the presumption was applied in this State, it was limited to those cases in which the circumstances failed, *prima facie,* to explain, justify or provide good cause for the creditor's delay in seeking payment of a debt. *See, e.g., Metlar, supra,* 86 *N.J.Eq.* at 332, 97 *A.* 961 (applying presumption after lapse of twenty years without explanation); *Blue v. Everett,* 55 *N.J.Eq.* 329, 342, 36 *A.* 960 (Ch.1897) (same), *aff'd,* 56 *N.J.Eq.* 455, 39 *A.* 765 (E. & A.1898); *Peacock, supra,* 4 *N.J.Eq.* at 70–71 (same).

Recently, the presumption has not been applied at all in this State. It was applied in a reported decision for the last time in 1939. *See Phair v. Melosh,* 125 *N.J.Eq.* 497, 501, 6 *A.*2d 491 (Ch.1939), *aff'd,* 127 *N.J.Eq.* 15, 11 *A.*2d 32 (E. & A.1940). The more recent trend, as observed by the Appellate Division, *supra,* 276 *N.J.Super.* at 497, 648 *A.*2d 269, appears to be away from reliance on the presumption of payment, and instead, on the statute of limitations barring entry into realty twenty years after the right of entry accrues. *See Lake Waterloo Corp. v. Kestenbaum,* 10 *N.J.* 525, 529, 92 *A.*2d 478 (1952) (stating that owner of tax-sale certificate "relie[d] on the presumption of payment [that] arises from" the statute of limitations barring entry into real estate after twenty years); *Hollings v. Hollings,* 8 *N.J.Super.* 552, 555–56, 73 *A.*2d 755 (Ch.Div.1950), *aff'd,* 12 *N.J.Super.* 57, 78 *A.*2d 919 (App.Div.1951) (holding that foreclosure of mortgage and collection on mortgage bond were barred by twenty-year and sixteen-year statutes of limitations). The reason for that result seems to be that "the multiplied statutes of limitation have reduced the occasions for invoking any other rule[,] and it is not frequent that a real rule of presumption is intended to be laid down." 9 *Wigmore on Evidence* § 2517 (Chadbourn rev. 1981).

## –B–

New Jersey has never applied the presumption to a bank deposit, but eleven other jurisdictions have. In those jurisdictions, the bank prevailed in less than one-third of the cases in

which the bank did not present affirmative evidence from its records to support its claim of payment. The types of bank accounts to which states have applied the presumption are divided into three categories: checking accounts, savings accounts and certificates of deposit.

Two states have applied the presumption to checking accounts: *Boscowitz v. Chase Nat'l Bank of New York*, 202 *Misc.* 1016, 111 *N.Y.S.*2d 147, 150 (Mun.Ct.1952), and *Commerce Union Bank v. Horton*, 475 *S.W.*2d 660, 662 (Tenn.1972).

Six states have applied the presumption to passbook-saving accounts: *Owens v. Bank of Brewton*, 53 *Ala.App.* 529, 302 *So.*2d 114, 116–17 (1974); *Hicks v. Exchange Bank & Trust Co.*, 252 *Ark.* 61, 478 *S.W.*2d 54, 56 (1972); *In re Fantozzi*, 183 *Ill.App.*3d 732, 132 *Ill.Dec.* 30, 32, 539 *N.E.*2d 340, 342 (1989); *Morse v. National Cent. Bank of Baltimore*, 150 *Md.* 142, 132 *A.* 598, 603 (1926); *Second Nat'l Bank of Titusville v. Thompson*, 44 *Pa.Super.* 200, 205–06 (Pa.Super.Ct.1910); and *Central Nat'l Bank of McKinney v. Booher*, 557 *S.W.*2d 563, 565 (Tex.Civ.App.1977).

Two states have applied the presumption to certificates of deposit: *Long v. Straus*, 124 *Ind.* 84, 24 *N.E.* 664 (1890), and *Blackstone v. First Nat'l Bank of Cody*, 64 *Wyo.* 318, 192 *P.*2d 411, 413 (1948). Virginia has applied the presumption to a savings certificate. *Wool v. Nationsbank of Virginia, N.A.*, 248 *Va.* 384, 448 *S.E.*2d 613, 614 (1994).

–C–

UJB and Amicus contend that if banks are denied the benefit of a presumption of payment, they will be forced to spend substantial sums of money to retain records of saving accounts "forever" to protect themselves from ancient claims. They argue that unless the common-law presumption of payment is extended to cover saving accounts, the presumption of abandonment of saving accounts after ten years, and all state and federal regulations with respect to retention of bank account records, will become meaningless.

We reject those contentions. The record-retention regulations promulgated under state law apply only to state-chartered savings-and-loan associations, and not to state-chartered banks. *See* the Savings and Loan Act (1963) (the "S & L Act"), *N.J.S.A.* 17:12B–1 to –277. UJB is a state-chartered commercial bank; hence, the S & L Act is not applicable to UJB. The New Jersey Banking Act, *N.J.S.A.* 17:9A–1 to –369, governs state-chartered commercial banks, such as UJB, but does not contain record-retention regulations with respect to evidence of payment on lost passbooks.

State-chartered banks are also subject to federal record-retention under the Federal Deposit Insurance Corporation (FDIC) statute, 12 *U.S.C.A.* § 1829b, and implementing regulations, 31 *C.F.R.* § 103.34(b) and § 103.38(d). The implementing regulations require retention of deposit slips, checks, signature cards, certificates of deposit and debits to a depositor's account for five years. 31 *C.F.R.* § 103.34(b). The regulations, however, do not establish a record-retention requirement for evidence of payment on lost passbooks.

Although UJB is a member of the New Jersey Banker's Association (NJBA) that recommends retention of withdrawal slips and other debits to a depositor's account for six years, the NJBA has made no recommendation to its membership in respect of retention of evidence of payment on lost passbooks.

The federal regulations were adopted for the purpose of assisting "criminal, tax, or regulatory investigations or proceedings." 12 *U.S.C.A.* § 1829b(a)(2). They were not intended to regulate or define the bank-depositor relationship. They did not become the *de facto* standard for all purposes as urged by UJB and Amicus. If the five-year record-retention requirements were intended to regulate the bank-depositor relationship, the enabling statute, most likely, also would have insulated banks from liability in actions based on or implicating records that the bank has destroyed in reliance on the regulations. *See Ohio Rev.Code Ann.* § 1101.08 (Baldwin 1995) (authorizing destruction of records after

one or six years that bank would need to defend claim for payment, and prohibiting any claim after lapse of one or six years depending on type of record).

Nor are we persuaded that the federal regulations necessarily reflect commercially reasonable practices. Indeed, plaintiff's expert testified that his bank, West Essex Savings, maintains records of lost-passbook affidavits "forever," pursuant to bank policy. Even if the federal regulations were to reflect commercially reasonable practices, that fact would not constitute affirmative evidence of payment. Consequently, we agree with the Appellate Division that existing federal and State regulations are "essentially irrelevant" in determining whether to apply a common-law twenty-year presumption of payment to bank deposits. *Pagano, supra,* 276 *N.J.Super.* at 500, 648 *A.*2d 269.

■ We also reject UJB's contention that the failure of the Appellate Division to apply the presumption of payment conflicts with the Uniform Unclaimed Property Act (Act), *N.J.S.A.* 46:30B–1 to –109. Under the Act, that became effective April 14, 1989, bank deposits are presumed abandoned after ten years if the depositor has taken no action on the account. *N.J.S.A.* 46:30B–18. In such instances, the State assumes custody and responsibility for safeguarding the property. *N.J.S.A.* 46:30B–61. It is highly unlikely that if the money was escheated under the Act, UJB would not have had some record to that effect given that the demand for payment was made within approximately eighteen months after the Act became effective. Moreover, the Act requires that a bank retain records of accounts for ten years after an account is deemed abandoned. *N.J.S.A.* 46:30B–95.

We recognize the possibility that UJB might have deemed the account to have been abandoned before the Act became effective. Under the former escheat statute, *N.J.S.A.* 2A:37–11 to –50 that was repealed by *L.*1989, *c.* 58, § 1 when the Act became effective, abandoned savings accounts were escheated to the State Treasurer either pursuant to a judgment of the Superior Court, *N.J.S.A.* 2A:37–20, or a voluntary payment of the money by a bank in the

form of a protective escheat, *N.J.S.A.* 2A:37–29. The escheat statute, like subsections 61 and 62 of the Act, provided an absolute defense to a turn over of money to the State Treasurer, *N.J.S.A.* 2A:37–33, and permitted reimbursement to a bank by the State Treasurer upon proof that the bank had also paid the money to the owner. *Ibid.* Hence, UJB's failure to produce proof of payment of the money to either the State Treasurer or the owner, precludes any relief under either the Act or the escheat statute.

### III

■ We are persuaded that at a time when the common-law presumption of payment is not being applied even in matters in which it was applied historically, no sound policy reason exists to extend its application to bank accounts. As *Wigmore, supra,* § 2517 suggests, and decisional law supports, the common-law presumption of payment was not generally recognized in the area of banking. When the presumption was applied in the earlier cases, banks seldom prevailed unless they had records to support the claim of payment. Thus when applied, the presumption did not obviate the need for record retention because a demand for payment on an old account was frequently supported by reasonable explanations for the delay.

We agree with the Supreme Court of Virginia that even if the lack of bank records is caused by adherence to established record-retention standards, the absence of records "does not constitute evidence of payment." *Wool, supra,* 448 *S.E.*2d at 615. Furthermore, no statutes, regulations or decisional law exempted UJB from retaining records to establish payment. It was a conscious economic decision made by the bank to shift its resources away from record retention. That may or may not be a sound business judgment, but clearly it is insufficient to justify the remedy UJB seeks from this Court.

Before the age of computers, banks could have established and retained a record, if nothing more than a log book, showing how it closed a passbook-savings account when a notation to that effect

was not placed in the original passbook. Now, modern technology has made the storage of vast amounts of information at low cost a common reality.

Long before the age of computers, it was known that *causa mortis* and *inter vivos* gifts could be made of passbook-saving accounts. *Borthwick v. Skurzynski*, 139 *N.J.Eq.* 520, 522–23, 52 *A*.2d 443 (Ch.1947), *aff'd o.b.*, 141 *N.J.Eq.* 363, 57 *A*.2d 216 (E. & A.1948). *See Foster v. Reiss*, 18 *N.J.* 41, 46–51, 112 *A*.2d 553 (1955) (requiring delivery of property to effectuate gift); 5 *N.J. Practice, Wills and Administration*, § 6, at 28–31 (Alfred C. Clapp) (rev. 3rd ed. 1982). Making a gift of a savings account conceivably could have delayed any demand for payment. In addition,

> the depositor of funds into a bank-savings account is ordinarily entitled to believe, and does in fact expect, that the deposit is entirely safe, that the funds will be indefinitely available, and that no demand need be made and no action need be taken to protect the right to obtain those funds at any time the passbook is presented.
>
> [*Pagano, supra*, 276 *N.J.Super.* at 498, 648 *A*.2d 269].

In contrast, the circumstances in the types of cases in which the presumption has been applied—mortgages, notes, judgments and legacies—failed to explain the years of inactivity. In those cases, the mortgagee, the holder of the note, the judgment creditor or the legatee is expected to take some action to protect his or her rights, whereas the holder of a savings-account passbook has no reason to take any action because he or she feels that the deposit is safe. The presumption of abandonment after ten years under the Act, *N.J.S.A.* 46:30B–18, does not affect the expectation of the ordinary savings-account depositor because he or she probably is unaware of its existence. *Pagano, supra*, 276 *N.J.Super.* at 498, 648 *A*.2d 269. Neither the escheat laws nor other regulations manifest any intent to govern the depositor-bank relationship.

What the bank seeks essentially is a judicial statute of limitations, to be applied retroactively, barring a claim on a passbook or savings account after the lapse of a fixed number of years. Such a

pronouncement must come from the Legislature, as occurred in Ohio. *See Rev.Code Ann.* § 1101.08.

Furthermore, the history of the presumption has made clear that it has followed the applicable statute of limitations and has always been applied by analogy to the limitations statute. Here, the applicable statute of limitations is six years, *see N.J.S.A.* 2A:14–1, but the cause of action did not accrue until plaintiff presented the passbook for payment and the request was denied. *Pagano, supra,* 276 *N.J.Super.* at 495–96, 648 *A.*2d 269.

## *IV*

UJB and Amicus argue that a passbook-savings account is not "an instrument of obligation" as determined by the Appellate Division. *Pagano, supra,* 276 *N.J.Super.* at 496, 648 *A.*2d 269. They argue that this error caused the Appellate Division to place the burden of proof entirely on the bank.

The cases relied on by the Appellate Division to support its conclusion that a passbook is an instrument of obligation do not support the thesis. *Guerin, supra,* 38 *N.J.Super.* at 460, 119 *A.*2d 780, involves a will as an instrument of obligation. *Kushinsky, supra,* 142 *N.J.Eq.* at 731, 61 *A.*2d 287, involves a mortgage bond. *Conlon, supra,* 82 *N.J.L.* at 357, 83 *A.* 183, involves a suit on a promissory note. At the time of those decisions, instruments of debt included a "bill, note, bond or other written evidence of indebtedness." *Ibid.* Although the three cases relied on by the Appellate Division involved suit on an instrument of obligation, neither case acknowledged that a passbook for a savings account is an instrument of debt.

Since the adoption of the Negotiable Instruments Law in 1902, *L.* 1902, *c.* 184, that was repealed by the Uniform Commercial Code, *L.* 1961, *c.* 120, § 120, instruments of obligation have generally been limited to negotiable instruments: drafts, checks, certificates of deposit and promissory notes. *N.J.S.A.* 12A:3–104. Although we need not decide in this case what might be exceptions

to this rule, we are satisfied that passbook-saving accounts do not fall within any exception.

When a bank accepts a deposit from a depositor for either a checking or savings account, a creditor-debtor relationship typically is established. *Bruno v. Collective Fed. Sav. & Loan Ass'n,* 147 *N.J.Super.* 115, 121, 370 *A.*2d 874 (App.Div.1977); *F.I.N.N.E., Inc. v. National State Bank of Newark,* 74 *N.J.Super.* 86, 89, 180 *A.*2d 532 (App.Div.1962); *Forbes v. First Camden Nat'l Bank & Trust Co.,* 25 *N.J.Super.* 17, 20, 95 *A.*2d 416 (App.Div.1953); 10 *Am. Jur.*2d *Banks* § 339 (1963).

■ The passbook received on the opening of a passbook-savings account is a type of receipt, not a written contract. It constitutes *prima facie,* but not conclusive, evidence that the amount credited was received by the bank and thus is open to explanation and contradiction with respect to what happened to the deposit. *Anthony v. Crocker First Nat'l Bank,* 95 *Cal.App.* 347, 272 *P.* 767, 769 (Dist.1928); *Rosenthal v. Citizens State Bank of Cortez,* 129 *Colo.* 35, 266 *P.*2d 767, 769 (1954); *Talcott v. First Nat'l Bank,* 53 *Kan.* 480, 36 *P.* 1066, 1067 (1894); *Black Mountain Bank v. Kelly,* 213 *Ky.* 34, 280 *S.W.* 461, 462 (1926); *Ash v. Livingston State Bank & Trust Co.,* 129 *So.*2d 863, 866–67 (La.Ct. App.1961); *Fischer v. Morris Plan Co.,* 275 *S.W.*2d 393, 395 (Mo.Ct.App.1955); *Village of Rosebud v. Rosebud Bank,* 92 *S.W.*2d 1007, 1009 (Mo.Ct.App.1936); *Schwartz v. State Bank,* 135 *A.D.* 42, 119 *N.Y.S.* 763, 764 (1909); *Rogliano v. First Nat'l Bank of Yonkers,* 110 *N.Y.S.*2d 311, 312 (County Ct.1952); *Terrasi v. Manufacturers Trust Co.,* 121 *N.Y.S.*2d 242, 245 (Mun.Ct.1953); 10 *Am.Jur.*2d, *supra,* § 347; M.C. Dransfield, Annotation, *Admissibility of Extrinsic Evidence to Explain or Contradict Bank Deposit Slips, Deposit Entries in Passbooks, Certificates of Deposit, or Similar Instruments,* 42 *A.L.R.*2d 600, 602–03, 605–06 (1955).

UJB's reliance on *Wool, supra,* is misplaced. That case involved a savings certificate, which is probably an instrument of obligation. That distinction, however, did not affect the decision. Although the common-law presumption of payment was applied,

the bank did not prevail. The court held that because the bank was unable to produce from its records any affirmative evidence of payment or cancellation of the certificate, plaintiff's possession of the original certificate was sufficient to rebut the presumption of payment by a preponderance of the evidence. *Wool, supra*, 448 *S.E.*2d at 615.

Notwithstanding the fact that the Appellate Division characterized the passbook-savings account as an instrument of debt, it did not regard possession of the passbook as conclusive proof of non-payment. Significantly, it was the jury, deliberating with proper instructions, not the Appellate Division, that found the bank had not paid the money. Moreover, the Appellate Division's conclusion that possession of the original uncancelled passbook was *prima facie* evidence of non-payment was sound. Payment of money deposited with a bank is an affirmative defense; the burden to prove payment is on the party asserting payment. *R.* 4:5–4; *Crown Capital Corp. v. Broderick*, 130 *N.J.L.* 198, 199, 32 *A.*2d 289 (Sup.Ct.1943); *Ocean County Nat'l Bank v. Stillwell*, 123 *N.J.Eq.* 337, 342, 197 *A.* 286 (E. & A.1938). Because the jury was instructed properly respecting the burden of proof, the error by the Appellate Division was harmless.

## V

We hold that because the common-law presumption of payment has been applied in New Jersey almost exclusively to mortgages and has never been applied to commercial transactions, we perceive no sound reason to revive a doctrine after its demise in this State for more than half a century for the purpose of applying it to bank accounts for the first time.

The judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice WILENTZ and Justices HANDLER, O'HERN, GARIBALDI, STEIN, and COLEMAN—6.

*Opposed*—None.