ELAINE ALBOM BRAFFMAN ET AL. *v.* BANK OF
AMERICA CORPORATION
(SC 18342)

Rogers, C. J., and Norcott, Katz, Palmer, Vertefeuille, Zarella and
McLachlan, Js.*

* The listing of justices reflects their seniority status on this court as of the date of oral argument.

Argued May 26—officially released July 20, 2010

*William F. Gallagher*, with whom, on the brief, was *David McCarry*, for the appellants (plaintiffs).

*Thomas J. Sansone*, with whom were *Anne D. Peterson* and, on the brief, *Lee F. Lizotte*, for the appellee (defendant).

*Opinion*

KATZ, J. The plaintiffs, Elaine Albom Braffman (Elaine), as custodian for David S. Braffman, Gerald

H. Braffman (Gerald), as custodian for Susannah Joy Braffman, David S. Braffman (David) and Susannah Joy Braffman-Amen (Susannah), appeal from the trial court's judgment in favor of the defendant, Bank of America Corporation, on the plaintiffs' claims that the defendant, upon demand, wrongfully had withheld the funds contained in two certificate of deposit passbook accounts, originally opened with one of the defendant's predecessors, Society for Savings Bank (Society).[1] The plaintiffs contend that the trial court improperly disregarded Practice Book § 10-50[2] and improperly allocated the burden of proof by requiring them to disprove the defendant's special defense that it previously had made payment to them. In a related claim, the plaintiffs contend that the trial court improperly failed to require the defendant to produce evidence of payment once the plaintiffs had presented a prima facie case of nonpayment by virtue of having introduced the uncancelled passbooks into evidence. Finally, they claim that the trial court's reliance on statutory and regulatory provisions that allow bank records to be destroyed seven years after an account is closed improperly created a judicially imposed statute of limitations against nonpayment actions brought after that period, which, in turn,

---

[1] The plaintiffs appealed from the judgment of the trial court to the Appellate Court, and we transferred the case to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] Practice Book § 10-50 provides: "No facts may be proved under either a general or special denial except such as show that the plaintiff's statements of fact are untrue. Facts which are consistent with such statements but show, notwithstanding, that the plaintiff has no cause of action, must be specially alleged. Thus, accord and satisfaction, arbitration and award, coverture, duress, fraud, illegality not apparent on the face of the pleadings, infancy, that the defendant was non compos mentis, payment (even though nonpayment is alleged by the plaintiff), release, the statute of limitations and res judicata must be specially pleaded, while advantage may be taken, under a simple denial, of such matters as the statute of frauds, or title in a third person to what the plaintiff sues upon or alleges to be the plaintiff's own."

served to immunize the defendant. We affirm the trial court's judgment.

The following facts, as found by the trial court, and procedural history are relevant to our resolution of the issues on appeal. In November, 1987, Gerald created the first of the two certificate of deposit accounts at issue by making a deposit in the amount of $33,079.37 for the benefit of his then minor daughter, Susannah. In November, 1988, Elaine opened the second account by making a deposit in the amount of $100,000 for the benefit of her then minor son, David. The accounts were funded by Mildred Spiers, Gerald's mother, who intended that the money be held for the benefit of Susannah and David and not be used until a " 'major life cycle event,' " such as the birth of a child or the purchase of a home, had occurred. The passbooks reflected that interest would accumulate, with an effective annual yield of 9.110 and 9.381 percent, respectively, and contained the following notation: "Interest will not be paid after maturity date unless renewed or redeposited." The maturity dates for the accounts were one year for Susannah's account, and three years for David's account.

On January 5, 2004, Gerald presented the passbooks at Fleet Bank (Fleet), Society's successor and the defendant's predecessor, and made demand for payment of the sums allegedly contained in the two accounts. In response to the demand, Fleet informed Gerald that it had no record of the existence of either account and, therefore, the accounts must have either been closed or escheated to the state. See footnotes 8 and 9 of this opinion.

After determining that the state was not holding escheated funds from the accounts, the plaintiffs commenced the present action against the defendant. In their substitute two count complaint, the plaintiffs

claimed, inter alia, that the defendant wrongfully had withheld the funds.[3] The defendant denied the allegations and asserted as special defenses, inter alia: (1) that the defendant or Fleet had paid the amounts in full owed to the plaintiffs; and (2) laches.[4]

At trial, although the parties agreed that they had entered into a debtor-creditor relationship in 1987 and 1988, as evidenced by the two passbook accounts, they obviously disagreed as to the continued existence of either account. The plaintiffs claimed that their uncancelled passbooks constituted prima facie evidence that the bank accounts had not been closed, that the defendant had lost the records of the accounts, perhaps because of subsequent bank mergers, and that, upon production of the uncancelled passbooks, the defendant was required to produce evidence that it had paid the principal and interest on the accounts. The defendant's position was that, at some point in time between the opening of the accounts and January, 1997, more than seven years before Gerald demanded payment, the plaintiffs had filed an affidavit claiming lost or misplaced passbooks and had received the principal and

[3] Count one was brought both by Elaine as custodian for David and by David individually. Count two was brought both by Gerald as custodian for Susannah and by Susannah individually. Within these two counts, in addition to claiming wrongful withholding, the plaintiffs also alleged that the defendant fraudulently had concealed its retention of the funds in violation of General Statutes § 52-595, and had breached its fiduciary relationship. The trial court deemed these other claims, as well as the requested relief of punitive and treble damages, to be abandoned because those claims had not been briefed by the plaintiffs.

[4] The defendant also had asserted as special defenses that: (1) Gerald and Elaine lacked standing to maintain the cause of action because David and Susannah no longer were minors; and (2) the plaintiffs' claims were barred because of their unreasonable and inexcusable delay in discovering that they were no longer receiving interest or statements on the accounts, which unfairly had prejudiced the defendant's ability to defend the action. The trial court concluded that the defendant had not briefed, and therefore was deemed to have waived, these special defenses. The trial court did not address the defendant's defense of laches.

accrued interest, thereby closing out the accounts. The trial court concluded that, under *Schiavone* v. *Bank of America, N.A.*, 102 Conn. App. 301, 925 A.2d 438 (2007), Connecticut does not shift the burden to the defendant upon a plaintiff's production of an uncancelled passbook and, instead, requires a court to weigh all of the evidence, including the plaintiff's conduct and the defendant's banking procedures, in evaluating a claim of nonpayment.

In engaging in that endeavor, the trial court had before it the following evidence in support of the plaintiffs' claim. The plaintiffs introduced each of the passbooks into evidence, over the defendant's hearsay objections, neither of which reflected that any withdrawals had been made from the accounts, or that the accounts had been closed or otherwise deactivated. Gerald testified that he had placed both passbooks in his safe deposit box, where they had remained until 2004. He contended that his decision to liquidate the funds in the two certificate of deposit accounts, after sixteen and seventeen years, respectively, was precipitated by news in late 2003, by which time David and Susannah were adults, that David was considering the purchase of an apartment in New York, and that Susannah was attempting to become pregnant. Elaine and Gerald stated that they had not actively looked for the passbooks before that time because of the understanding they had with Spiers that the money would be held until such " 'major life cycle events' " had occurred with respect to David and Susannah. Elaine and Gerald denied closing the accounts or filing any affidavit of lost or misplaced passbooks that would have allowed them to close the accounts without presenting the original passbooks. The plaintiffs further contended that David and Susannah had not known of the existence of Spiers' gift until Gerald had informed them of the defendant's refusal to pay upon demand. Although each

passbook stated that interest would not be paid after the maturity date "unless renewed or redeposited," Gerald testified that he had understood that the certificates of deposit would continue to roll over and earn interest and, therefore, did not require frequent monitoring.

The trial court noted, however, the following evidence, or lack thereof, that it found either did not support, contradicted or was inconsistent with the plaintiffs' claim. With respect to documentary evidence, in response to a request for production by the defendant, the plaintiffs were unable to produce income tax returns for either David or Susannah from 1988, through 1997, to demonstrate when, if ever, the defendant had paid interest on the accounts and when such payments had stopped, because they claimed that those records had been destroyed in a flood in the family home. The tax returns available for David for 2000, 2002, 2003, and for Susannah from 1998, through 2003, reflected a significant amount of interest or dividend income, but either no or nominal interest from the defendant's predecessors, Society and Fleet.[5]

The evidence also established that, during the time period in question, Gerald and Elaine had run a busy and successful law practice, and, accordingly, the plaintiffs had left the preparation of the annual tax returns for themselves, their law practice and their children to their accountant, John Salvatore. Each year, Gerald had provided all the tax records he had received to Salvatore, including many 1099 tax forms for reporting interest received from the various investments that Gerald or Spiers had funded for Gerald's children. Gerald had no specific memory of the documents and had relied on Salvatore's professionalism to prepare accurate filings.

---

[5] David's tax returns for 2000 and 2002 showed nominal interest from Fleet, an amount that the plaintiffs acknowledged was insufficient to correspond to the $100,000 certificate of deposit established for his benefit.

With respect to Salvatore's handling of the accounts, the trial court remarked: "It is significant to the court that [Salvatore] reviewed the [plaintiffs'] tax information against the prior year's reported income to make certain that he had received appropriate documentation from all expected sources. The accounts in question would have generated $9000 annually of reportable interest for David during the first three years the original certificate was in force. Susannah would have received approximately $3000 annually of interest income during the term of her certificate. It is difficult to believe that the plaintiffs and [Salvatore] would fail to notice and question early on either the defendant's failure to pay and report interest, or the stopping of such interest payments after they had started in 1989 or 1990.[6] In addition, the court finds it unlikely that the plaintiffs, who have resided at the same address from 1982 to the present, did not receive any of the [maturity of account and earned interest] notices from the defendant."[7]

---

[6] According to Salvatore's deposition testimony, which was submitted into evidence, although Salvatore did not keep records of returns he prepared for more than a few years and thus could not provide any tax returns for the years in question, he explained how in any given year he would have: notified Gerald of any discrepancies from the previous year in the tax information that had been provided; made inquiry of Gerald about any "missing" 1099 tax forms for the two accounts in question; see footnote 8 of this opinion; and, if any interest on the accounts had been reported in one year, but was not reported in a subsequent year, asked Gerald whether a Form 1099 had been issued for those accounts.

[7] As the trial court found, the defendant had in place the following policies, which would have presented several opportunities for the plaintiffs to be reminded of these accounts if, indeed, the accounts had been active throughout this time period: "The defendant established that at the time these accounts were opened it was the policy . . . to have signature cards created, which would define the terms of the account contract as well as social security information and mailing addresses *for the purposes of communicating with the account holder and reporting taxable income.* . . .

"The defendant also established [bank] policies with regard to accounts, such as those held by the plaintiffs. Forty-five days prior to the maturity date of an account, the bank would generate an automated letter advising the customer that the maturity date was approaching and what options the account holder had. Specifically, the bank would ask whether the customer

The trial court also concluded that the defendant had provided credible testimony regarding federal and state banking regulations and procedures governing the merger of banks that "make it unlikely that these accounts were lost in such a transaction. Each of these corporate transactions requires that the merged bank and the acquiring bank . . . go through a strict due diligence review and audit to ensure a proper transfer of all customers accounts, such as the [accounts] in question. The defendant had rigorous and redundant internal auditing functions to track customer accounts and interest paid. Furthermore, the defendant's policies allowed a customer to close an account without the passbook being presented or surrendered. A customer could represent to the bank that the passbook had been lost or misplaced, present suitable identification and then would be allowed to access the [certificate of deposit] funds to close the account or to withdraw funds from the account."

Finally, the trial court identified as material the statutes that create presumptions of an abandonment of accounts, such as the passbooks in question, after a period of three years and in the absence of certain facts; General Statutes § 3-57a (a) (1);[8] set a time frame in

wanted the proceeds mailed out by check, reinvested in another certificate of deposit of the same duration at the then prevailing interest rates or rolled over into some other account. In the absence of any instructions from the certificate holder, the bank would have rolled over the certificate of deposit into an instrument of similar length and paying whatever the prevailing [certificate of deposit] interest rate was at the time. Furthermore, the bank would file federal income reporting forms for the interest earned to the federal government and the account holder on an annual basis." (Emphasis added.)

[8] General Statutes § 3-57a (a) provides in relevant part: "The following property held or owing by a banking or financial organization is presumed abandoned unless the owner thereof is known to be living by an officer of such organization:

"(1) Any demand or savings deposit made in this state with a banking organization, together with any interest or dividend thereon, excluding any charges that lawfully may be withheld, unless the owner has, within three years: (A) Increased or decreased the amount of the deposit, or presented

which abandoned funds escheat to the state; General Statutes § 3-65a (b);[9] and allow the state banking commissioner to adopt regulations prescribing periods of time for banks to retain their records and immunizing banks for destroying records after that time period has expired. General Statutes § 36a-40.[10] The court noted that these provisions, in conjunction with certain state regulations,[11] establish that, when funds escheat to the

the passbook or other similar evidence of the deposit for the crediting of interest; or (B) corresponded in writing with the banking organization concerning the deposit; or (C) otherwise indicated an interest in the deposit as evidenced by (i) a memorandum on file with the banking organization or (ii) the fact that the Internal Revenue Service Form 1099 sent from the banking organization to the owner is not returned to the banking organization by the United States Postal Service."

[9] General Statutes § 3-65a (b) provides: "Within ninety days after the close of the calendar year in which property is presumed abandoned, the holder shall pay or deliver such property to the Treasurer and file, on forms which the Treasurer shall provide, a report of unclaimed property. Each report shall be verified and shall include: (1) The name, if known, and last-known address, if any, of each person appearing to be the owner of such property; (2) in case of unclaimed funds of an insurance company, the full name of the insured or annuitant and beneficiary and his or her last-known address appearing on the insurance company's records; (3) the nature and identifying number, if any, or description of the property and the amount appearing from the records to be due except that the holder shall report in the aggregate items having a value of less than fifty dollars; (4) the date when the property became payable, demandable or returnable and the date of the last transaction with the owner with respect to the property; (5) if the holder is a successor to other holders, or if the holder has changed the holder's name, all prior known names and addresses of each holder of the property; and (6) such other information as the Treasurer may require."

[10] General Statutes § 36a-40 provides: "The commissioner may, by regulation adopted in accordance with chapter 54, prescribe periods of time for the retention of records of any Connecticut bank or Connecticut credit union. Records which have been retained for the period so prescribed may thereafter be destroyed, and no liability shall thereby accrue against the Connecticut bank or Connecticut credit union destroying them. In any cause or proceeding in which any such records may be called in question or be demanded of any such bank or credit union or any officer or employee thereof, a showing that the period so prescribed has elapsed shall be sufficient excuse for failure to produce them."

[11] Section 36a-40-3 (c) (3) (F) of the Regulations of Connecticut State Agencies requires banks to maintain records of certificates of deposit accounts for seven years after the date on which they are paid, and subpara-

state or are fully withdrawn from an account, the defendant may, as it claimed to have done in the present case, close the account, retain the records for seven years and thereafter destroy those records.[12] The court noted that, under the facts of the present case, Susannah's account would have been deemed abandoned in November, 1992, and escheated to the state in 1993, whereas David's account would have been deemed abandoned in November, 1993, and escheated to the state in 1994. Because, however, the evidence established that the funds had not escheated to the state and the defendant had no record of the accounts, the court stated that it had to determine which theory advanced by the parties was supported by the evidence—either that the defendant had the funds but lost the records or that the defendant had made payment and closed the accounts more than seven years before Gerald's January, 2004 demand for payment.

Before rendering judgment for the defendant, the court made clear that it had concluded that the plaintiffs held a sincere, but mistaken, belief that the accounts had not been closed. The trial court remarked that "all of the testimony in this case provided by the plaintiffs and the defendant was credible." It further noted: "It is understandable to the court that the plaintiffs may have forgotten filing lost or misplaced passbook affidavits as early as 1989 or 1991. In addition, it would have made good sense to shift [Spiers'] gifts to investments that had a better rate of return after the initial [accounts] matured."[13] It was also, however, "significant to the

graphs (B) and (E) of that regulation requires banks to maintain records of affidavits of lost passbook accounts for seven years and records of unclaimed accounts for three years after escheatment to the state.

[12] The court found that the defendant had a seven year retention policy, consistent with state and federal law.

[13] The trial court noted that the Federal Reserve website, documenting historical interest rates, showed that interest rates substantially had declined after hitting a peak in 1989. There was testimony that Spiers, who was present when both accounts were opened, had died in 1993, several years

court that this action involves not one but two accounts opened on separate dates and under separate social security numbers. It is unlikely that the defendant would lose not one, but two, of the plaintiffs' accounts. Furthermore, the court takes judicial notice of the case of *Braffman* v. *Webster Bank*, Superior Court, judicial district of New Haven, Docket No. CV-07-5013397S (November 21, 2007), in which Matthew Braffman, another child of Elaine and Gerald, asserts that Webster Bank refused to pay on a certificate of deposit opened in 1989. Demand for payment on the $29,850 account was made April 29, 2004. The claims made by Matthew Braffman in his separate action are substantially similar to the claims asserted in this case. This court finds it improbable that two banking institutions would lose three separate accounts held by members of the same family." Ultimately, the court concluded: "[T]he plaintiffs have not sustained their burden of proof . . . . The plaintiffs have not provided persuasive evidence that the accounts in question have not been paid by the defendant or its predecessors." Accordingly, the trial court rendered judgment for the defendant. This appeal followed.

The plaintiffs claim that the trial court improperly applied and allocated the burden of proof because it did not require the defendant to prove its special defense of payment in accordance with Practice Book § 10-50, and improperly failed to require the defendant to produce evidence of payment once the plaintiffs had presented a prima facie case of nonpayment by having introduced the uncancelled passbooks into evidence. The plaintiffs also claim that, by relying on the statutory and regulatory document retention provisions that allow bank

after each of the accounts reached their initial maturity dates. There is nothing in the record to indicate whether Spiers had access to the accounts and therefore could have played any role in a decision to remove the funds or reinvest them into a higher yielding investment.

records to be destroyed seven years after an account is closed, the trial court improperly created a judicially imposed statute of limitations, thereby immunizing the defendant. The defendant responds that the trial court properly allocated the burden of proof regarding the plaintiffs' claim of nonpayment and did not improperly assign to the plaintiffs the burden of disproving the defendant's special defense of payment. It also asserts that, even if the trial court improperly required the plaintiffs to prove nonpayment of the proceeds, the evidence credited at trial proved the defendant's special defense that the proceeds had been paid to the plaintiffs. The defendant also disputes, as a matter of fact, that the trial court *required* the plaintiffs to do more than introduce the uncancelled passbooks in order to prove a prima facie case that they had not been paid. In point of fact, the defendant notes that the plaintiffs produced substantial testimony supporting their claim and did not merely rely on the uncancelled passbooks as evidence of payment. Finally, the defendant maintains that the trial court merely relied on statutory and regulatory document retention provisions allowing for the disposal of all closed account records seven years after an account has been closed as evidence that payment on the accounts in issue had been made, and not to immunize it from wrongful withholding of the plaintiffs' funds.[14] We conclude that the trial court properly rendered judgment for the defendant.

I

We begin with the plaintiffs' related arguments regarding the burden of proof. Specifically, they contend that the trial court improperly disregarded Practice Book § 10-50 by assigning to the plaintiffs the burden of

---

[14] The defendant also raises as an alternate ground for affirmance that the trial court improperly allowed into evidence the plaintiffs' certificate of deposit passbooks. Because we affirm the judgment, we do not reach this alternate ground for affirmance.

disproving the defendant's special defense of payment, and thereby, placed an improper burden on them to prove a negative, specifically, nonpayment, when the defendant controlled the information regarding payment. In connection with that claim, the plaintiffs also contend that, once they had presented a prima facie case of nonpayment by virtue of having introduced the uncancelled passbooks into evidence, the trial court should have shifted the burden to the defendant to prove payment, but improperly failed to do so in reliance on *Schiavone* v. *Bank of America, N.A.*, supra, 102 Conn. App. 301.

The defendant responds that it is clear from the trial court's decision that the court never placed the burden of disproving the defendant's defense of payment on the plaintiffs but, rather, consistent with § 10-50, decided the case after considering all of the evidence and concluding that the defendant's evidence was more persuasive. The defendant further asserts that, even if the trial court improperly allocated the burden of proof by requiring the plaintiffs to prove nonpayment of the proceeds, the evidence adduced at trial was more than sufficient to prove the defendant's position that the proceeds had been paid to the plaintiffs years earlier.

We note that the plaintiffs' claims raise interesting issues, some of which, however, we need not reach under the facts of the present case. In sum, we conclude that, even if the trial court improperly allocated the burden of proof, that impropriety would be harmless because the trial court credited ample evidence produced by the defendant to demonstrate that the proceeds had been paid to the plaintiffs prior to their demand in 2004.

We note at the outset our standard of review. "The question of whether a trial court has held a party to a less exacting standard of proof than the law requires

is a legal one. *Lopinto* v. *Haines*, 185 Conn. 527, 536, 441 A.2d 151 (1981). Accordingly, our review is plenary." *Kaczynski* v. *Kaczynski*, 294 Conn. 121, 126, 981 A.2d 1068 (2009). Similarly, plenary review applies to a question of misallocation of a burden of proof. See *New Haven* v. *State Board of Education*, 228 Conn. 699, 714–20, 638 A.2d 589 (1994) (applying plenary review to challenge to allocation of burden of proof between parties in administrative appeal); *Zabaneh* v. *Dan Beard Associates, LLC*, 105 Conn. App. 134, 140, 937 A.2d 706 (applying plenary review to plaintiff's claim that "the [trial] court improperly required that it, rather than the defendant, bear the burden of proof regarding the existence of permission"), cert. denied, 286 Conn. 916, 945 A.2d 979 (2008); *Wieselman* v. *Hoeniger*, 103 Conn. App. 591, 596–97, 930 A.2d 768 (applying plenary review to claim "that although the court applied the clear and convincing standard of proof required to establish a fraudulent transfer, it did so to the wrong party"), cert. denied, 284 Conn. 930, 934 A.2d 245 (2007).

The trial court's memorandum of decision provides the following additional facts pertinent to its application and allocation of the burden of proof. The trial court began with a brief history of the procedural posture of the case. It then turned to the legal issues, beginning with "the evidential effect of the presentation of the original passbooks. The plaintiffs claim that they have presented a prima facie case of nonpayment by virtue of the presentation of the uncancelled passbooks and that [by doing so] the burden of proof and persuasion has shifted to the defendant to prove payment. The plaintiffs cite New Jersey and Virginia case law for this proposition."[15] Following the defendant's suggestion,

---

[15] Specifically, the court took note of *Pagano* v. *United Jersey Bank*, 276 N.J. Super. 489, 496, 648 A.2d 269 (App. Div. 1994), aff'd, 143 N.J. 220, 670 A.2d 509 (1996), and *Wool* v. *Nationsbank*, 248 Va. 384, 386, 448 S.E.2d 613 (1994), as well as the following cases from other jurisdictions following the rule advocated by the plaintiffs: *Compass Bank* v. *Richerson*, 724 So. 2d 10, 13 (Ala. App. 1998), cert. denied, 724 So. 2d 14 (Ala. 1998); *Olko* v.

the court turned to *Schiavone* v. *Bank of America, N.A.*, supra, 102 Conn. App. 301, concluding that, "[a]lthough *Schiavone* does not directly discuss and reject the rule of law that would shift the burden of proof onto the defendant to show payment, it is implicit in the opinion that no such burden shifting is recognized in Connecticut. [The Appellate Court in] *Schiavone* approved the trial court's weighing of *all* of the evidence in evaluating the plaintiff's claim of nonpayment. [Id., 305.] The court declines to follow the plaintiffs' suggestion to employ a burden shifting analysis. The burden of proof by a fair preponderance of the evidence remains on each party with regard to their respective assertions." (Emphasis in original.) The trial court then recited the testimony from both parties, all of which it found credible, the documentary evidence, as well as the statutes and the regulatory provisions that the court deemed material, and thereafter made the following statements on which the plaintiffs' claim is based: "[T]he court finds that the plaintiffs have not met their burden of proof. . . . [T]he plaintiffs have not sustained their burden of proof with regard to the[ir] claims . . . . The plaintiffs have not provided persuasive evidence that the accounts in question have not been paid by the defendant or its predecessors."

In light of the record in the present case, we quickly can put aside the questions raised by the plaintiffs as to whether the mere introduction of uncancelled passbooks as evidence of nonpayment establishes a prima facie case of nonpayment, whether such evidence *in isolation* required the trial court to shift the burden to the defendant to prove nonpayment, and whether the trial court in the present case improperly relied on *Schiavone* to reject the burden shifting approach of

*Citibank, N.A.*, 44 App. Div. 3d 356, 842 N.Y.S.2d 437 (2007); *Flanagan* v. *Fidelity Bank*, 438 Pa. Super. 516, 518 n.2, 652 A.2d 930 (1995); *Blackstone* v. *First National Bank*, 64 Wyo. 318, 325, 192 P.2d 411 (1948).

other jurisdictions.[16] It is clear that, during the plaintiffs' case-in-chief, they introduced a wealth of evidence other than the passbooks to prove nonpayment. Moreover, as we explain subsequently in this opinion, in its memorandum of decision, the trial court credited the defendant's evidence that it had paid the funds and closed the accounts. The present case, therefore, was not one in which the defendant did not produce evidence to rebut a prima facie case and does not require resolution of the aforementioned questions. Accordingly, we turn to the question of whether the trial court improperly required the plaintiffs to prove nonpayment, when the defendant had asserted payment as its special defense.

As we embark on this exercise, we first turn to Practice Book § 10-50, which governs the pleading of special defenses and provides in relevant part: "No facts may be proved under either a · general or special denial except such as show that the plaintiff's statements of fact are untrue. Facts which are consistent with such statements but show, notwithstanding, that the plaintiff has no cause of action, must be specially alleged. *Thus . . . payment (even though nonpayment is alleged by the plaintiff) . . . must be specially pleaded . . . .*"

---

[16] We note, however, that, in *Schiavone*, the defendant bank had presented evidence that it was its policy that presentment of the passbook was not a prerequisite to withdrawal when a customer presents two forms of identification. The Appellate Court specifically had noted: "[T]he [trial] court found that the plaintiff's possession of the original certificate of deposit, *in light of the [defendant's] procedures*, was not proof that [the plaintiff] had not cashed in that certificate." (Emphasis added.) *Schiavone* v. *Bank of America, N.A.*, supra, 102 Conn. App. 305. Thus, that case did not involve the mere presentation of the uncancelled passbooks that automatically shifted the burden of proof to the defendant to prove payment, and it was in the context of the discussion of that case that the trial court in the present case rejected the plaintiffs' reliance on the New Jersey and Virginia cases, "declin[ing] to follow the plaintiffs' suggestion to employ a burden shifting analysis," leaving "[t]he burden of proof by a fair preponderance of the evidence . . . on each party with regard to their respective assertions."

(Emphasis added.) Notably, although this rule required the plaintiffs to allege *nonpayment* of the accounts by the defendant, it nonetheless, was incumbent on the defendant to plead *payment* as a special defense if it wished to assert that the accounts had been paid. See *Selvaggi* v. *Miron*, 60 Conn. App. 600, 601, 760 A.2d 539 (2000) ("The burden of [pleading and] proving the special defense of payment rests on the defendant. See *New England Savings Bank* v. *Bedford Realty Corp.*, 246 Conn. 594, 606 n.10, 717 A.2d 713 [1998]; *Stanley* v. *M. H. Rhodes, Inc.*, 140 Conn. 689, 697, 103 A.2d 143 [1954]; *Curley* v. *Marzullo*, 127 Conn. 354, 359, 17 A.2d 10 [1940]; *Apuzzo* v. *Hoer*, 125 Conn. 196, 203, 4 A.2d 424 [1939]; *Pieri* v. *Bristol*, 43 Conn. App. 435, 441, 683 A.2d 414 [1996]."). This particular rule of practice as it applies specifically to nonpayment claims creates an atypical situation within our general jurisprudence on special defenses because "[i]t is axiomatic that [t]he purpose of a special defense is to plead facts that are *consistent* with the allegations of the complaint but demonstrate, nonetheless, that the plaintiff has no cause of action." (Emphasis added.) *New England Retail Properties, Inc.* v. *Maturo*, 102 Conn. App. 476, 489, 925 A.2d 1151, cert. denied, 284 Conn. 912, 931 A.2d 932 (2007). It is self-evident, of course, that a claim of payment by the defendant would be inconsistent with the plaintiffs' allegation of nonpayment. Because, however, the defendant had pleaded the special defense of payment,[17] we need not address further this apparent anomaly.

---

[17] Additionally, we note that the defendant's answer specifically denied the existence of a legal obligation to pay any moneys to the plaintiffs. See Practice Book § 10-46 ("[t]he defendant in the answer shall specially deny such allegations of the complaint as the defendant intends to controvert, admitting the truth of the other allegations, unless the defendant intends in good faith to controvert all the allegations, in which case he or she may deny them generally").

We therefore consider whether the trial court improperly placed the burden on the plaintiffs to disprove the defendant's special defense by requiring them to prove nonpayment. Although the defendant contends that the trial court's decision, read in its entirety, makes clear that the trial court never placed that burden on the plaintiffs, we note that the trial court never stated expressly that it was placing the burden on the defendant to prove its special defense that it had made payment to the plaintiffs. Moreover, the trial court never mentioned Practice Book § 10-50. Nor did it cite any of the well settled jurisprudence establishing that it was incumbent on the defendant to prove payment. See, e.g., *Selvaggi* v. *Miron*, supra, 60 Conn. App. 601. We note that, in rejecting the plaintiffs' claim that the court should recognize a burden shifting rule triggered by the introduction of the uncancelled passbooks, the trial court did state that "[t]he burden of proof by a fair preponderance of the evidence remains on each party with regard to their respective assertions." Thereafter, however, the trial court never restated that principle after reciting the pertinent evidence and, instead, remarked on three separate occasions about the *plaintiffs'* failure to meet their burden of proof, thereby suggesting, at the very least, that the defendant had no burden to prove that it had made payment to the plaintiffs.

We conclude, however, that, even if the trial court improperly allocated the burden of proof by requiring the plaintiffs to prove nonpayment of the accounts, the evidence at trial expressly credited by the court was more than sufficient to prove the defendant's position that the proceeds had been paid to the plaintiffs years before the demand was made in January, 2004. Specifically, the trial court credited: the existence of the defendant's rigorous internal auditing functions to track customer accounts and interest paid; the absence of

any federal income tax forms reporting annual interest from the defendant on the plaintiffs' accounts; the presence of such forms reporting interest from other sources; Salvatore's careful, annual review of the plaintiffs' tax records and his communications with the plaintiffs in connection with that review; the fact that no records then existed for either account, which were opened at different times, by different people and in different names; a similar claim of nonpayment by another member of the family with respect to a similar account in another bank; the evidence that the funds had not escheated to the state; and the defendant's policy, consistent with state and federal laws, permitting it to destroy records seven years after an account has been closed. On the basis of all of this evidence that "contradicted or was inconsistent with the plaintiffs' testimony," the court determined that judgment would enter for the defendant, whose position had been "that the plaintiffs, sometime between the opening of the accounts and January of 1997, filed an affidavit claiming a lost or misplaced passbook, received the principal and accrued interest and closed out the accounts." In other words, the court did not find the evidence in equipoise, but, rather, viewed all the evidence as weighing in favor of the defendant. See *Ireland* v. *Ireland*, 246 Conn. 413, 444, 717 A.2d 676 (1998) (*Palmer, J.*, concurring) (allocating burden of proof by preponderance of evidence is dispositive only when fact finder determines that evidence is in equipoise); *State* v. *Webb*, 238 Conn. 389, 508, 680 A.2d 147 (1996) ("[T]he only fact-finding efforts that actually turn on the allocation of [the] burden [of proof] are those in which the fact finder, after weighing the evidence, finds its mind in perfect equipoise. . . . In such a rare case, the allocation of the burden of persuasion to the party asserting the truth of the proposition at issue means that that party cannot prevail." [Citation omitted.]), aff'd after

remand, 252 Conn. 128, 750 A.2d 448, cert. denied, 531 U.S. 835, 121 S. Ct. 93, 148 L. Ed. 2d 53 (2000). Accordingly, any impropriety regarding the allocation of the burden of proof necessarily was harmless. See *Levy* v. *Commission on Human Rights & Opportunities*, 236 Conn. 96, 112, 671 A.2d 349 (1996) (hearing officer's use of incorrect burden shifting analysis was harmless error because "factual findings, which the hearing officer reached irrespective of any particular mode of legal analysis employed, necessarily require[d]" same result); see also *PSE Consulting, Inc.* v. *Frank Mercede & Sons, Inc.*, 267 Conn. 279, 295, 838 A.2d 135 (2004) (improper instruction on burden shifting on plaintiff's prima facie case harmless error when jury found in favor of defendant on special defense); *Preston* v. *Keith*, 217 Conn. 12, 20 n.8, 584 A.2d 439 (1991) ("[i]n a case . . . where the elements of a claim must be proved by a preponderance of the evidence, the allocation of the burden of proof determines which party prevails on an issue only in the relatively rare case where the fact finder concludes that the evidence on that issue is in equipoise").

II

The plaintiffs' claim challenging the propriety of the trial court's reliance on the document retention laws requires little discussion. Section 36a-40 authorizes the banking commissioner to prescribe, by regulation, the period of time that a Connecticut bank or credit union must retain its records. It also provides that records retained for the period so prescribed may thereafter be destroyed without exposing the bank to liability. See footnote 10 of this opinion. Section 36a-40-3 of the Regulations of Connecticut State Agencies allows for the destruction of the records at issue in the present case after seven years. See footnote 11 of this opinion. The plaintiffs contend that § 36a-40 simply shields banks from liability for destroying records. They assert, however, that, by relying on § 36a-40, in conjunction with

§ 36a-40-3 of the regulations, the trial court improperly transformed the statute into a judicially imposed statute of limitations, thereby immunizing the defendant from any nonpayment claim brought after the seven year retention period. The defendant refutes that contention, asserting that the trial court merely relied on those statutory and regulatory provisions as evidence that payment on the accounts in issue had been made. Our review of the trial court's decision demonstrates that the defendant is correct.

It is apparent that the objectives of the statutory and the regulatory scheme are to provide a practical mechanism for determining when records of closed accounts may be discarded and to relieve financial institutions of any liability for their failure to produce such records once the retention period has expired. This case was not about holding the defendant liable for its inability to produce the records. It was about holding the defendant liable for its allegedly wrongful failure to deliver the funds contained in two certificate of deposit passbook accounts upon their presentment. Because these provisions established that the only circumstance under which a bank lawfully could destroy such records was if the accounts had been closed for more than seven years, these provisions, in connection with the absence of the account records in this case, were merely part of the defendant's evidence showing that the payment of the proceeds from the accounts had been made to the plaintiffs more than seven years prior to Gerald's demand in 2004. Indeed, had the plaintiffs produced any evidence to show activity on the accounts within seven years prior to that demand, the document retention law would have supported their theory of the case. Therefore, the plaintiffs' claim fails.

The judgment is affirmed.

In this opinion the other justices concurred.